549 F.2d 303
 23 Wage & Hour Cas. (BN 15, 80 Lab.Cas. P 33,477
 Paul A. RICHARD et al., Appellees,
v.
MARRIOTT CORPORATION, Appellant.
W. J. Usery, Jr., Secretary of Labor, United States
Department of Labor, and Chamber of Commerce of
the United States of America, Amici Curiae.
Paul A. RICHARD et al., Appellants,
v.
MARRIOTT CORPORATION, Appellee.
W. J. Usery, Jr., Secretary of Labor, United States
Department of Labor, and Chamber of Commerce of
the United States of America, Amici Curiae.
 Nos. 76-1496, 76-1497.
 United States Court of Appeals,
Fourth Circuit.
 Argued Dec. 8, 1976.
Decided Feb. 7, 1977.
 
 Ivan H. Rich, Jr., Washington, D. C., for appellant in 76-1496 and for appellee in 76-1497.
 Peter K. Stackhouse, Arlington, Va. (Tolbert, Smith, Fitzgerald & Ramsey, Arlington, Va., on brief), for appellees in 76-1496 and for appellants in 76-1497.
 James B. Leonard, Atty., U. S. Dept. of Labor, Washington, D. C. (William J. Kilberg, Sol. of Labor, Carin Ann Clauss, Associate Sol., U. S. Dept. of Labor, Washington, D. C., on brief), for amicus curiae.
 Before CRAVEN, WIDENER and HALL, Circuit Judges.
 CRAVEN, Circuit Judge:
 
 
 1
 In 1974 and 1975 the tips were good at Marriott Corporation's Joshua Tree Restaurant in McLean, Virginia. Each waiter and waitress averaged getting above $5.43 an hour, and some made considerably more. Since the average hourly receipt in tips was far and away more than the federal minimum wage, it seemed sensible to management, and perhaps also to the employees at the time, that Marriott simply underwrite the federal minimum hourly wage, i. e., agree to pay it or make up the difference between the tips and the hourly wage in the event the tips did not come to as much as the minimum wage. That was the scheme of employment, and it apparently worked to everyone's satisfaction (because the tips were so large) until Congress amended the Fair Labor Standards Act on May 1, 1974. Section 3(m) of the Act was amended to read as follows:
 
 
 2
 In determining the wage of a tipped employee, the amount paid such employee by his employer shall be deemed to be increased on account of tips by an amount determined by the employer, but not by an amount in excess of 50 per centum of the applicable minimum wage rate, except that the amount of the increase on account of tips determined by the employer may not exceed the value of tips actually received by the employee. The previous sentence shall not apply with respect to any tipped employee unless (1) such employee has been informed by the employer of the provisions of this subsection, and (2) all tips received by such employee have been retained by the employee, except that this subsection shall not be construed to prohibit the pooling of tips among employees who customarily and regularly receive tips.
 
 
 3
 29 U.S.C. § 203(m).
 
 
 4
 The 1974 Senate Report states the purpose of the provision:
 
 
 5
 This latter provision is added to make clear the original Congressional intent that an employer could not use the tips of a "tipped employee" to satisfy more than 50 percent of the Act's applicable minimum wage.
 
 
 6
 As early as June 21, 1974, the Wage and Hour Administrator issued an opinion letter that, although not officially published, was widely circulated and reprinted in the National Restaurant Association's newsletter in the July 22, 1974 issue. This opinion letter and subsequent ones repudiated earlier opinions and gave notice to Marriott and other employers that tips had to be retained by the employees, that agreements remitting tips to the employer were henceforth invalid, and that the employer had to pay, regardless of the amount of tips, at least one-half of the minimum wage.
 
 
 7
 The district court held, upon complaint of Marriott's employees, and we agree, that
 
 
 8
 (1) tips belong to the employee to whom they are left, and
 
 
 9
 (2) an employer must pay his tipped employees at least one-half of the applicable minimum wage in addition to tips left them by customers.
 
 
 10
 The district court thereupon awarded damages at the rate of 50 percent of the applicable minimum wage from July 22, 1974, the date on which Marriott learned that its pay practice was in conflict with administrative interpretations, to June 6, 1975, the date that it voluntarily ceased its former pay practice and came into compliance with the Act as amended.
 
 
 11
 Although it is not perfectly clear, we think from our reading of the oral opinion of the district court that it also held that Marriott had failed to satisfy the objective standard of "good faith" contained in Section 11 of the Portal-to-Portal Act of 1947, 29 U.S.C. § 260, when it continued using a pay practice which was in conflict with, and had been repudiated by, a written administrative interpretation that had been brought to its attention. We agree. See Mayhew, Inc. v. Wirtz, 413 F.2d 658 (4th Cir. 1969).
 
 
 12
 Only in respect to the measure of damages, and the award of special liquidated damages, did the district court fall into error. Out of a vague sense of fairness and a feeling that $5.43 and up per hour is enough for a wait(e) r(ess), the district judge held that Marriott was entitled to the statutory 50 percent "tip credit" against its minimum wage obligation. But such a conclusion cannot be reconciled with the language of the 1974 amendment of the Congress. Section 3(m), 29 U.S.C. § 203(m), provides for such a credit, but then adds these words: "The previous sentence shall not apply with respect to any tipped employee unless (1) such employee has been informed by the employer of the provisions of this subsection . . . ." (Emphasis added.) Marriott never informed its employees of the provisions of Section 3(m) of the Fair Labor Standards Act. To have done so would have invited trouble. An employer cannot reasonably expect employees to happily accept being told that they will not get (one-half) the minimum wage ordered by the Congress.
 
 
 13
 What the Congress has said, in effect, to restaurant employers is that, if you precisely follow the language of 3(m) and fully inform your employees of it, you may obtain a 50 percent credit from the receipt of tips toward your obligation to pay the minimum wage. The corollary seems obvious and unavoidable: if the employer does not follow the command of the statute, he gets no credit. It is nonsense to argue, as does Marriott, that compliance with the statute results in one-half credit, but that defiance of the statute results in 100 percent credit. We think the conclusion is compelled that the measure of damages for each of Marriott's employees is payment of the applicable minimum wage in full.
 
 
 14
 Section 16(b) of the Fair Labor Standards Act, 29 U.S.C. § 216(b), provides that "(a)ny employer who violates the provisions of section 206 . . . shall be liable to the employee or employees affected in the amount of their unpaid minimum wages . . . and in an additional equal amount as liquidated damages." The district court correctly held, we think, that the plaintiffs are entitled to liquidated damages in an amount equal to their unliquidated damages. The language of the statute is mandatory. The Portal-to-Portal Act, however, does permit the district court, "in its sound discretion," to award a lesser amount of liquidated damages, or none at all, "if the employer shows to the satisfaction of the court that the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation of the Fair Labor Standards Act of 1938, as amended." Section 11; 29 U.S.C. § 260 (emphasis added).
 
 
 15
 We have already indicated our agreement with the district court that Marriott did not establish its "objective" good faith. Instead, it took a chance, acted at its peril, and lost. As we said in Wright v. Carrigg, 275 F.2d 448, 449 (4th Cir. 1960), the limited exception puts upon the "delinquent employer (who would) . . . escape the payment of liquidated damages (a) . . . 'plain and substantial burden of persuading the court by proof that his failure to obey the statute was both in good faith and predicated upon such reasonable grounds that it would be unfair to impose upon him more than a compensatory verdict.' " See Mayhew, Inc. v. Wirtz, supra; King v. Board of Education, 435 F.2d 295, 298 (7th Cir. 1970); Rothman v. Publicker Industries, 201 F.2d 618, 620 (3d Cir. 1953). Here, as the district court stated, the administrator's opinion letter "put the defendant on notice that it should look to its payment practices for tipped employees."
 
 
 16
 On remand, the district court will amend its judgment to award the full applicable minimum wage to each employee for the specified period, and, in addition, a like amount as liquidated damages. The district court should also consider, on remand, supplementing the award of counsel fees to pay for the prosecution of the appeal.
 
 
 17
 AFFIRMED IN PART, VACATED IN PART, AND REMANDED.