593 F.2d 565
 23 Wage & Hour Cas. (BN 1312, 85 Lab.Cas. P 33,757
 Ray MARSHALL, Secretary of Labor, United States Department
of Labor, Appellee,
v.
EMERSONS LTD., Emersons Ltd. of Virginia, Inc., Emersons
Ltd. of Alexandria, Inc., Emersons Ltd. of Richmond, Inc.,
Emersons Ltd. of Rosslyn, Inc., Emersons Ltd. of Tysons,
Inc., John P. Radnay, Individually and as president of all
corporate defendants, Eli Levi, Individually and as
Vice-President of all corporate Defendants, Appellants.
 No. 77-1744.
 United States Court of Appeals,
Fourth Circuit.
 Argued May 3, 1978.
Decided March 8, 1979.
 
 Joel I. Keiler, Washington, D. C. (Benjamin E. Goldman, Ronald I. Tish, Feldman, Krieger & Sheehan, Washington, D. C., on brief), for appellants.
 Joseph M. Woodward, Atty., U. S. Dept. of Labor, Washington, D. C. (Carin Ann Clauss, Sol. of Labor, Donald S. Shire, Associate Sol., Dennis D. Clark, Atty., U. S. Dept. of Labor, Washington, D. C., Marshall H. Harris, Regional Sol., Philadelphia, Pa., on brief), for appellee.
 Before HAYNSWORTH, Chief Judge, and RUSSELL and WIDENER, Circuit Judges.
 WIDENER, Circuit Judge:
 
 
 1
 This case is an appeal from a decision of the district court holding that Emersons Ltd.'s use of a tip back wage plan to compensate its employees at its various restaurants violated the Fair Labor Standards Act's (the Act) minimum wage requirements, 29 U.S.C. § 203(m), As amended by Fair Labor Standards Amendments of 1974, P.L. No. 93-259, § 13, 88 Stat. 55, 64-65. In the district court, Emersons argued that its tip back wage plan was lawful; however, in light of this court's decision in Richard v. Marriott Corp., 549 F.2d 303 (4th Cir. 1977), cert. den., 433 U.S. 915, 97 S.Ct. 2988, 53 L.Ed.2d 1100, appellant has abandoned its argument pertaining to the legality of its wage plan. Rather, it contends that the district court erred in awarding monetary damages in excess of the amount stipulated to by the parties, and also by denying it a complete defense to its violation of the Wage and Hour laws pursuant to Section 10 of the Portal-to-Portal Act of 1947, 29 U.S.C. § 259.[1]
 
 
 2
 On November 16, 1976, the case went to trial in the district court. The legal issues were whether Emersons wage plans violated the minimum wage provisions of the Act. The principal, and perhaps only, factual issue was the number of hours the employees had worked. At the trial, it was necessary for the Secretary of Labor to establish the number of hours each of Emersons' employees actually worked since the number of hours established were required to be found by the district court in formulating a backwage compensation award due the employees in the event Emersons' wage plans were held to be in violation of the Act. Some thirty witnesses were on hand at the trial to testify to the number of hours worked by Emersons' employees. Some of them were going to testify on behalf of the Secretary and others were going to testify on behalf of Emersons. In an attempt to expedite the trial, a recess (an hour) was taken to give the parties an opportunity to resolve the dispute over the number of hours worked by Emersons' employees.
 
 
 3
 During the recess, the parties entered into a stipulation. The stipulation, among other things, provided: "The parties agree that the computation submitted as plaintiff's Exhibit T are accurate and reflect damages computed in the event the court finds liability, except that the Labor Department figures should be reduced 20 cents per shift per employee in regard to uncompensated time."[2] Plaintiff's Exhibit T computed the amount of backwages owed the employees by multiplying the total number of hours worked by each employee according to Exhibit T by one-half of the applicable minimum wage. As a result of the stipulation, which was read into the record on November 16th in open court, and filed November 17th, no witnesses were called to testify to the amount of hours worked by Emersons' employees;[3] indeed, the Secretary rested his opening case on the stipulation without calling a witness, and underscored the stipulation in argument as follows: "In the event the court finds the tip back plan is illegal, then the computation stands as pursuant to that stipulation." (Italics added).
 
 
 4
 On November 23, 1976, the district court issued its memorandum opinion holding that Emersons violated the minimum wage provision of the Act as defined in section 3(m), 29 U.S.C. § 203(m). The court stated, "The Court adopts as its findings of fact the written Stipulation read into the record on November 16, 1976. . . ." The court further stated that its construction of section 3(m) of the Act as amended by the Fair Labor Standards Amendments of 1974 would permit a backwage recovery of the full minimum wage for the recorded and unrecorded hours of work put in by appellant's employees; however, it further stated the Secretary was asserting a claim for only fifty percent of the minimum wage, which, of course, was pursuant to the stipulation. The court instructed the Secretary to prepare a decree incorporating the court's memorandum opinion by reference; granting the injunctive relief sought by the Secretary, including a direction to pay the unpaid minimum wages; and fixing the amount and naming the persons entitled to those wages. The court instructed the Secretary's attorney to present the decree for entry after submission to counsel for Emersons for approval as to form. Additionally, the district court stated that the decree should provide for the retention of jurisdiction over the action to allow modification of the judgment should the final decision in Richard v. Marriott Corp., supra, indicate that to be appropriate.
 
 
 5
 In accordance with the district court's memorandum opinion, on January 13, 1977 the Secretary's attorney submitted a decree for entry of judgment to counsel for Emersons. This decree conformed with the district court's memorandum opinion as well as the stipulation entered into between the parties.[4] However, notice of presenting this decree for entry was never given nor was it filed with the district court.
 
 
 6
 On February 15, 1977, however, the Secretary's attorney did file a motion with the district court to enter final judgment. The motion noted that the district court had retained jurisdiction of the action to allow modification of the judgment should the final decision in Richard v. Marriott Corp., supra, indicate that to be appropriate; and maintained that the rule of law in the Fourth Circuit, as stated in Richard v. Marriott Corp., supra, mandated that Emersons' employees be awarded one hundred percent of the minimum wage rather than fifty percent.[5] Accordingly, the Secretary submitted a proposed judgment that was identical to the one submitted to Emersons' attorney on January 13, 1977, except that the amount of backwage compensation due Emersons' employees had been doubled.[6] On February 18, 1977, the district court entered judgment in accordance with the Secretary's proposed judgment submitted on February 15, 1977, thereby awarding backwage compensation in the amount of $294,003.46.
 
 
 7
 We are of opinion the district court erred in awarding the employees backwage compensation in the amount of $294,003.46 in contravention of the stipulation entered into between Emersons and the Secretary. The district court should have entered judgment in accordance with its memorandum opinion of November 23, 1976, which adopted as its finding of fact the stipulation entered into between appellant and the Secretary.[7]
 
 
 8
 It is true, as the Secretary contends, "that a stipulation of counsel originally designed to expedite the trial should not be rigidly adhered to when it becomes apparent that it may inflict a manifest injustice upon one of the contracting parties." Maryland Cas. Co. v. Rickenbaker, 146 F.2d 751, 753 (4th Cir. 1944). It is also true that when a stipulation is entered into under a mistake of law, " 'trial courts may, in the exercise of a sound judicial discretion and in the furtherance of justice, relieve parties from stipulations which they have entered into in the course of judicial proceedings, and . . . on appeal the determination of the trial court will not ordinarily be interfered with, except where a manifest abuse of discretion is disclosed." Brast v. Winding Gulf Colliery Co., 94 F.2d 179, 181 (4th Cir. 1938). However, in the instant case, neither of these situations are present. Thus, the general rule applies that "stipulations of attorneys made during a trial may not be disregarded or set aside at will . . . ." Maryland Cas. Co. v. Rickenbaker, supra, at 753.
 
 
 9
 The stipulation entered into between Emersons and the Secretary negated the dispute over the number of hours worked by the employees in question. Emersons stipulated that the computations submitted by the Secretary as plaintiff's Exhibit T were accurate as to the number of hours worked by the employees and the amount of backwage compensation due those employees in the event the district court found it liable for violating the Act. Thus, the Secretary was relieved of the burden of proving the number of hours worked by some 711 employees. Additionally, Emersons gave up its opportunity to challenge the Secretary's figures regarding the number of hours worked by its employees. For example, by agreeing to the Secretary's Exhibit T, the employer agreed to one extra hour per shift per employee for "off the clock time" for day waiters and waitresses which it would have contested absent the stipulation. It is apparent that the stipulation involved considerable give and take on both sides. In contrast to the Secretary's position, we believe that a manifest injustice would result if we permitted the stipulation to be set aside rather than if we permitted it to stand.
 
 
 10
 The Secretary's contention that the district court might disregard the stipulation because he claims it was entered into under a mistake of law is not persuasive. The Secretary was fully aware of the Richard v. Marriott case at the time of argument. His attorney argued to the court in this case the importance of the Marriott case and that the Secretary had been granted permission to argue as amicus. It offered to file a part of the transcript in the Marriott case in the case at hand. The Secretary knew the tip back issue was the same in this case as in the Marriott case, and despite that and the fact that he knew the plaintiff in the Marriott case asked for payment on the basis of 100% Of the minimum wage, he knowingly and deliberately entered into the stipulation based on half payment, and secured from the employer the concessions with respect to proving his case as to each employee and off the clock time for the day waiters and waitresses. Far from being entered into under a mistake of law, the Secretary was quite knowledgeable.
 
 
 11
 On appeal, Emersons also contends that the district court erred in ruling that appellant was not entitled to a complete defense to liability for violation of the Act pursuant to section 10 of the Portal-to-Portal Act of 1947, 29 U.S.C. § 259. That section, in pertinent part, provides:
 
 
 12
 In any action or proceeding based on any act or omission on or after May 14, 1947, no employer shall be subject to any liability or punishment for or on account of the failure of the employer to pay minimum wages or overtime compensation under the Fair Labor Standards Act of 1938, as amended . . . if he pleads and proves that the act or omission complained of was in good faith in conformity with and in reliance on any written administrative regulation, order, ruling, approval, or interpretation, of the agency of the United States specified in subsection (b) of this section, or any administrative practice or enforcement policy of such agency with respect to the class of employers to which he belonged. Such a defense, if established, shall be a bar to the action or proceeding, notwithstanding that after such act or omission, such administrative regulation, order, ruling, approval, interpretation, practice, or enforcement policy is modified or rescinded or is determined by judicial authority to be invalid or of no legal effect.
 
 
 13
 (b) The agency referred to in subsection (a) of this section shall be
 
 
 14
 (1) in the case of the Fair Labor Standards Act of 1938, as amended the Administrator of the Wage and Hour Division of the Department of Labor(.)
 
 
 15
 At trial, Rita Langsan, Emersons' payroll supervisor and insurance manager, testified that Emersons checked into the legality of its pay system and was assured by its attorney that the tip back wage system utilized conformed with the Wage and Hour Administrator's administrative interpretations of the Act prior to the 1974 amendments. Additionally, there was introduced into evidence a letter from Emersons' attorney stating that, "The new amendments do not affect the 'tip back' system. It is still legal as far as the federal government is concerned." Consequently, Emersons maintained that it was entitled to a complete defense to liability pursuant to section 10 of the Portal-to-Portal Act in that it proved good faith reliance upon the Wage and Hour Administrator's administrative interpretations of the Act.
 
 
 16
 The district court held that Emersons was not entitled to the Portal-to-Portal Act defense because it has not proved reliance "on any written administrative regulation, etc." The claim is that the district court erred in concluding that it had not proven good faith reliance.
 
 
 17
 Taken at face value, the evidence introduced at trial by Emersons (the Secretary offered no rebuttal) on the Portal-to-Portal Act defense may satisfy the objective good faith reliance test laid down by this court in Clifton D. Mayhew, Inc. v. Wirtz, 413 F.2d 658 (4th Cir. 1969), and the evidence offered needs to be explained if it is to be rejected. On remand, the district court should afford both Emersons and the Secretary an opportunity to present whatever additional evidence they may have on the issue of good faith reliance and make new findings of fact and conclusions of law.
 
 
 18
 The judgment of the district court is vacated and the case remanded for a hearing on the matter of the Portal-to-Portal defense only. Following a decision on that question, any judgment which may be entered against Emersons will conform to the stipulation read into the record on November 16, 1976, with an award not to exceed $147,001.73. We say not to exceed $147,001.73 because, under Marriott, p. 305, the Portal-to-Portal defense may be available for a part of the period in question, although not for all of it.
 
 
 19
 VACATED AND REMANDED WITH INSTRUCTIONS.
 
 
 
 [1]
 Appellant also appealed the decision of the district court on the ground that appellant was not given adequate notice prior to the holding of the hearing for entry of final judgment, as provided by the Federal Rules of Civil Procedure, and was thus denied due process of law. Because of our disposition of the stipulation issue, this ground for appeal has been rendered moot
 The plan used had in the past been lawful. The lawsuit concerned the 1974 amendments.
 
 
 [2]
 The remainder of the stipulation provided the following:
 Dinner waiters and waitresses employed at the establishments in question were required by their employer to pay over to their employer from monies left by customers on the table and credit card tips an amount equivalent to the number of hours of work recorded each work week by said employees, multiplied by the following amounts in the following years: 1974 $1.90, 1975 $1.86 to $1.90, 1976 $2.00.
 Employees designated above received from their employer an amount in each pay period equal to the number of hours of work recorded times the dollar amount shown above, less federal and state taxes.
 The parties agree as to the validity of the meal credit amount.
 Parties stipulate that for each hour actually worked the employee in question received from monies left on the table, credit card tips and from defendant at least $2.20 per hour.
 The stipulation was filed with the district court on November 17, 1976, having been read into the record the day before.
 
 
 [3]
 Most of the witnesses were dismissed as a result of the stipulation
 
 
 [4]
 The decree ordered the payment of backwage compensation to the employees in the amount of $147,001.73. This amount was in conformity with plaintiff's Exhibit T, which was made part of the stipulation between the parties
 
 
 [5]
 In Richard v. Marriott Corp., 549 F.2d 303 (4th Cir. 1977), cert. den., 433 U.S. 915, 97 S.Ct. 2988, 53 L.Ed.2d 1100, this court stated that since the requirements of section 3(m) of the Act, as amended by the Fair Labor Standards Amendments of 1974, were not complied with, "the measure of damages for each of Marriott's employees is payment of the applicable minimum wage in full." Id. at 305. The Secretary argued that since the district court stated that Emersons did not comply with the requirements of section 3(m), Richard v. Marriott Corp., supra, mandated an award of one hundred percent of the applicable minimum wage
 
 
 [6]
 The amount of backwage compensation due was listed as $294,003.46
 
 
 [7]
 Thus, the amount of backwage compensation due was $147,001.73, which is computed by multiplying the number of hours worked by each employee as agreed to in the stipulation by one-half of the applicable minimum wage