Fred CALDMAN, et al., Plaintiffs,

v.

STATE OF CALIFORNIA, Defendant.

Civ. S–90–0866 DFL PAN.

United States District Court,
E.D. California.

March 17, 1994.

Frank A. Lalle, San Mateo County Legal Aid Soc., Redwood City, CA, Rosemary Bishop San Diego County Legal Aid Soc., San Diego, CA, J. Mark Waxman, Weissburg and Aronson, Los Angeles, CA, Richard G. McCracken, Davis Cowell and Bowe, San Francisco, CA, Craig Becker, University of California at Los Angeles Law School, Los Angeles, CA, Lucy Quacinella, Northern California Legal Services, Chico, CA, Lynn S. Carman, Bay Area Legal Foundation, Corte Madera, CA, for plaintiffs.

Robert D. Shuman, Edmund K. Brehl, California Dept. of Personnel Admin. Legal Div., Sacramento, CA, for defendant.

## MEMORANDUM OF DECISION AND ORDER

LEVI, District Judge.

This is yet another case arising from the State of California's failure to timely enact a budget in 1990 and 1992. Plaintiffs are a class of persons who provide in-home supportive services. Plaintiffs' first amended complaint asserts two causes of action: (1) a claim for violation of the Fair Labor Standards Act (the "FLSA"), 29 U.S.C. § 206(b), in 1990; and (2) a claim for violation of the FLSA in 1992. Plaintiffs move for summary judgment and liquidated damages, or alternatively, prejudgment interest, on both claims. For the reasons discussed below, plaintiffs' motion for summary judgment is granted with respect to the 1992 cause of action and granted in part with respect to the 1990 cause of action.

I

The facts relevant to the present motion are not in dispute. Plaintiffs provide in-home supportive services under the California In–Home Supportive Services program ("IHSS"). *See* Cal.Welf. & Inst.Code §§ 12300 et seq. Defendant State of California is plaintiffs' employer under 29 U.S.C. § 203(d). Twice a month plaintiffs submit records of the number of hours they work under IHSS to the Welfare Department office in the county in which they work. The Welfare Department reviews the records, certifies their accuracy, and submits them to the State for payment. Plaintiffs received no notice or instruction from the State or any other source asking them to suspend provision of services during the summer of 1990 or the summer of 1992.

On July 1, 1990, the State ceased payments to plaintiffs for their services because no budget had been adopted. On July 19, 1990, visiting Judge Tanner issued a preliminary injunction in this case, ordering the State to resume payments to plaintiffs for their services. The State's action caused payments to plaintiffs to be delayed up to 16 days beyond their normal payday during the 1990 budget impasse.

This court vacated the preliminary injunction on July 29, 1992, and stayed its dissolution until August 14, 1992. On August 14, 1992, the State ceased paying plaintiffs for their services because once again no budget had been adopted. On August 25, 1992, the California Superior Court for the County of San Francisco issued a temporary restraining order requiring the State to resume payments to plaintiffs. The State's action

caused payments to plaintiffs to be delayed up to 11 days beyond their normal payday during the 1992 budget impasse.

## II

In *Biggs v. Wilson,* 1 F.3d 1537 (9th Cir. 1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 902, 127 L.Ed.2d 94 (1994), a case involving the 1990 California budget impasse, the Ninth Circuit held that the State violated the FLSA, 29 U.S.C. § 206(b),[1] by making payments to State highway maintenance workers that were up to 15 days late. The court found it impossible to distinguish between late payment and nonpayment of minimum wages for purposes of determining whether an employer has violated the FLSA. *Biggs,* 1 F.3d at 1540–41. The court held that "payment of minimum wages is late if not done on payday." *Id.* at 1543.

■ It is undisputed that the State is plaintiffs' "employer" for purposes of the FLSA. *See Bonnette v. California Health and Welfare Agency,* 704 F.2d 1465, 1470 (9th Cir.1983) (holding that under the FLSA's liberal definition of "employer," the State welfare agencies are the employers of

IHSS providers). It also is undisputed that the State failed to timely pay plaintiffs their minimum wages when due during the 1990 and 1992 budget impasses. It follows under *Biggs* that the State violated the FLSA both in 1990 and in 1992 when it failed to pay plaintiffs their minimum wages on time. *Biggs* does not permit an inquiry as to whether payment to plaintiffs was reasonably prompt in light of the totality of the circumstances.[2] Thus, plaintiffs are entitled to summary judgment as to liability with respect to both of their FLSA claims.[3]

## III

Plaintiffs seek liquidated damages for the State's violations of the FLSA in 1990 and 1992.

■ "Any employer who violates the provisions of section 206 or section 207 of this title shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages." 29 U.S.C. § 216(b). "Liquidated damages are compensatory, not punitive in

1. 29 U.S.C. § 206(b) provides that "[e]very employer shall pay" employees not less than the minimum wage set by the FLSA in 29 U.S.C. § 206(a)(1) if "in any workweek [the employee] is engaged in commerce."

2. The *Biggs* court also rejected the same argument made by the State in this case concerning the Tenth Amendment. *See Biggs,* 1 F.3d at 1543 (holding that "[t]o the extent compliance with the FLSA interferes with the state budgetary process, that interference is caused by state law, not federal law").

In *Garcia v. San Antonio Metro. Transit Authority,* 469 U.S. 528, 105 S.Ct. 1005, 83 L.Ed.2d 1016 (1985), the Supreme Court held that the Commerce Clause did not contain an exception for traditional governmental functions and thus that the Congress could enforce the FLSA as against the States and its employees. In reaching this conclusion the Court noted that the FLSA merely binds the states to "the same minimum-wage and overtime obligations that hundreds of thousands of other employers, public as well as private, have to meet." *Id.* at 554, 105 S.Ct. at 1019. This case, as well as *Biggs,* may suggest that the Court's comparison of private and public employers fails to capture the complexity of state government both as to its organization—which unlike a business entity has no

board of directors but makes a virtue of competing, sometimes offsetting, centers of authority—and as to its motive forces, which are political rather than economic. Indeed, it may be that it was the very inability of the State to timely pay wages that here generated the political pressure to dissolve the budget impasse between the branches of the government.

3. In footnote 4 of its opposition, the State raises two points in an attempt to avoid summary judgment. First, the State implies that plaintiffs may be subject to the "general household workers" exclusion under the FLSA (*see* 29 C.F.R. § 552.-6). However, the State has not submitted any evidence to this effect, and its conclusory assertion at this late date is not sufficient to defeat summary judgment. *Cf. Abshire v. County of Kern,* 908 F.2d 483, 485–86 (9th Cir.1990) (employers who claim that an exemption applies to their employees have the burden of proof on that issue), *cert. denied,* 498 U.S. 1068, 111 S.Ct. 785, 112 L.Ed.2d 848 (1991).

Second, the State implies that the attempted solicitation of union membership may have invalidated the consent process. It suffices to note that the State was fully informed of the precise mechanics of the notice-giving process that would be used in this case and made no timely objection. (*See* Decl. of Craig Becker.)

nature." *EEOC v. First Citizens Bank of Billings,* 758 F.2d 397, 403 (9th Cir.), *cert. denied,* 474 U.S. 902, 106 S.Ct. 228, 88 L.Ed.2d 228 (1985). The FLSA originally made such damages mandatory. *See Overnight Motor Transportation Co. v. Missel,* 316 U.S. 572, 581, 62 S.Ct. 1216, 1220, 86 L.Ed. 1682 (1942). However, the Portal-to-Portal Act, 29 U.S.C. § 260, made doubling discretionary rather than mandatory, by permitting a court to withhold liquidated damages in an action to recover unpaid minimum wages "if the employer shows ... that the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation of the [FLSA]."[4] An employer bears a "substantial burden" in proving this defense, which contains what have been described as subjective and objective components. *Brock v. Shirk,* 833 F.2d 1326, 1330 (9th Cir.1987), *vacated on other grounds,* 488 U.S. 806, 109 S.Ct. 38, 102 L.Ed.2d 18 (1988). If the employer fails to meet this burden, a court must award liquidated damages. *Id.* at 1331; *First Citizens Bank,* 758 F.2d at 403. Even if an employer demonstrates that it acted in good faith, a court nonetheless has the discretion to award liquidated damages for a violation of the FLSA. *See, e.g., Peters v. City of Shreveport,* 818 F.2d 1148, 1167 (5th Cir.1987), *cert. denied,* 485 U.S. 930, 108 S.Ct. 1101, 99 L.Ed.2d 264 (1988). If a court determines that there has been a violation of the FLSA but decides that liquidated damages are not appropriate under § 260, the court normally will award prejudgment interest, which is necessary to make whole those employees who have been deprived of wages unlawfully. *Ford v. Alfaro,* 785 F.2d 835, 842 (9th Cir. 1986).

### A. *1992 Claim*

Plaintiffs argue that the State cannot meet the good faith exception to liquidated dam-

ages with respect to wages that were paid late as a result of the 1992 budget impasse. They contend that once the district court in the *Biggs* case issued a declaration in 1991 that the State violates the FLSA when in the course of a budget impasse it fails to pay its employees promptly, *see Biggs v. Wilson,* 828 F.Supp. 774, 780 (E.D.Cal.1991), *aff'd,* 1 F.3d 1537 (9th Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 902, 127 L.Ed.2d 94 (1994), any subsequent failure in this regard could not constitute an action taken under an objectively reasonable belief that the State was in compliance with the FLSA.

An employer's failure to heed administrative rulemaking or precedent with respect to the FLSA deprives the employer of the good faith defense. *See, e.g., Joiner v. City of Macon,* 814 F.2d 1537, 1539 (11th Cir.1987) (in view of Department of Labor regulation, the City of Macon could not reasonably believe that its mass transit system employees were excluded from FLSA requirements); *Richard v. Marriott Corp.,* 549 F.2d 303, 306 (4th Cir.) (holding that widely circulated 1974 opinion letter of the Wage and Hour Administrator, which apparently was not addressed specifically to defendant, put defendant on notice of proper procedure for crediting tips against the minimum wage, depriving defendant of ability to assert good faith defense to liquidated damages), *cert. denied,* 433 U.S. 915, 97 S.Ct. 2988, 53 L.Ed.2d 1100 (1977).

Here, the inapplicability of the good faith exception is at least as apparent as in *Joiner* and *Richard.* Indeed, the case against good faith is stronger here because the district court's order in *Biggs* was addressed specifically to the State. Moreover, the enactment of S.B. 220 demonstrates that the State was aware of the order and attempted to follow it with respect to certain State employees, but not as to plaintiffs.[5]

---

**4.** However, there is still "a strong presumption in favor of doubling." *Walton v. United Consumers Club, Inc.,* 786 F.2d 303, 310 (7th Cir.1986).

**5.** S.B. 220, enacted in July 1992, allowed for continued payment of most State employees despite the absence of a budget. Plaintiffs allege, and the State does not dispute, that "the State's

executive branch construed the legislation as not including providers of in-home supportive services ... [and thus] paid all State employees during the budget impasse of 1992 through registered warrants (IOUs) except the Plaintiffs." (Motion at 6.)

Thus, the State was on notice by July 1992 that its failure to issue prompt payment to plaintiffs would violate the FLSA.

The State makes three unpersuasive arguments as to why it should not be liable for liquidated damages with respect to the 1992 violation. First, the State contends that "[t]he delay in payment to plaintiffs was reasonable" because "[t]here is no doubt that the California Constitution and statutes absolutely preclude payment of claims without legislative appropriation." (Opposition at 18.) In effect, the State is reoffering its Tenth Amendment argument as to liability, this time in relation to damages. But because the district court in *Biggs* rejected the Tenth Amendment argument in 1991, the State could not rely on this argument in 1992 as justification for delay of payment to IHSS employees. Moreover, as noted above, the State made provision for payment of other employees in recognition that after *Biggs* delay of payment could not be excused because of a budget impasse.

Second, the State argues that it acted reasonably in 1992 by not paying plaintiffs on time because S.B. 220 distinguished plaintiffs from other State employees (such as the plaintiffs in *Biggs*) for the purpose of payment under the legislation during the 1992 budget impasse. (*See* Opposition at 18.) This is simply a restatement of the argument above that State law did not permit payment.[6]

Third, the State argues that since private employers and public employers are treated differently in several sections of the FLSA and in regulations promulgated under the FLSA, it was reasonable for the State to assume that it was not subject to the prompt payment provisions of the FLSA. (*See* Opposition at 19–20.) However, the FLSA defines "employer" to include both private and public employers. 29 U.S.C. § 203(d). Although the FLSA and its accompanying regulations distinguish between private and public employers in a few respects, *see, e.g.,* 29 U.S.C. § 207(*o*) (allowing public employers to substitute compensatory time off for cash overtime compensation); *id.* § 207(k) (allow-

ing public police and fire departments to use personnel for extended shifts without paying overtime rates); 29 C.F.R. § 541.5d (defining payment on a salary basis differently for public and private employees), nothing in the FLSA or in the relevant regulations indicates that public employers are not subject to the timely payment requirement of the FLSA. Given the express holding by the district court in *Biggs* that the State of California is in fact subject to this provision of the FLSA, it would have been unreasonable for the State to determine otherwise with respect to plaintiffs on the basis of specific provisions of the FLSA that are not relevant in this context.

The district court in *Biggs* concluded that the State of California violated the FLSA by not paying its employees promptly. This holding in 1991 eliminates the possibility that the State's actions in 1992, though in fact in violation of the FLSA, were taken under an objectively reasonable belief that the State did not have to pay plaintiffs promptly. It follows that plaintiffs are entitled to liquidated damages with respect to the 1992 violation of the FLSA.

### B. *1990 Claim*

■ Plaintiffs' claim to liquidated damages as to the 1990 violation, however, stands on a different footing. The *Biggs* decision had not been rendered, and there was no authority directly on point.

Plaintiffs argue that several cases and opinion letters put the State on notice, even before the district court handed down its ruling in *Biggs*, that it would violate the FLSA if it did not pay plaintiffs on the date that payment was due. However, the cases cited by plaintiffs do not address a budget impasse or the temporary disruption of payments during a crisis. Many concern the payment of overtime compensation. *See, e.g., Rigopoulos v. Kervan,* 140 F.2d 506 (2d Cir.1943). Others concern the time when the statute of limitations for a violation of the FLSA begins to run. *See, e.g., Beebe v. United States,* 226 Ct.Cl. 308, 640 F.2d 1283

---

6. The State does not suggest that there was any question as to plaintiffs' status as employees, given the long-standing holding in *Bonnette* that IHSS providers are State employees.

(1981). In fact, prior to the district court opinion in *Biggs*, no court specifically had addressed the question of prompt payment during a budget impasse. On that basis, the district court in *Biggs* stated that liquidated damages were not appropriate with respect to the State's failure to make timely payment to its employees during the 1990 budget lacuna. *See Biggs*, 828 F.Supp. at 779 ("[T]he State had reasonable grounds for believing that its conduct complied with the Act because neither statutes, the applicable regulations nor the cases directly address the issue of prompt payment in the face of a state budget impasse. This case appears to be one of first impression.").

In the course of finding that the State violated the FLSA by not paying its employees promptly during the 1990 budget impasse, the Ninth Circuit found persuasive many of the authorities cited by plaintiffs in this case. *See Biggs*, 1 F.3d at 1540–43. However, the opinion does not suggest that these authorities were so squarely on point that the finding of liability was ineluctable. In fact, when discussing cases such as *Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 65 S.Ct. 895, 89 L.Ed. 1296 (1945), and *United States v. Klinghoffer Bros. Realty Corp.*, 285 F.2d 487 (2d Cir.1961), both of which are heavily relied upon by plaintiffs here to show the State's lack of objective good faith in 1990, the Ninth Circuit stated that the holding it was announcing "comports with such case law *as there is*." *Biggs*, 1 F.3d at 1541 (emphasis added); *see also id.* (noting that "[a]lthough *not directly on point*, we find it difficult to read *Brooklyn Savings Bank v. O'Neil* without concluding that an employer violates the Act if payments are late") (citation omitted) (emphasis added).

The State understandably hesitated in 1990 to act in violation of State statutory and constitutional limitations upon payment without the authorization of a budget. A failure to timely pay wages due to a budget impasse reasonably could have been viewed by the State in 1990 as a unique situation, not controlled by previous decisions construing the FLSA's prompt payment requirement with respect to both private and public employers. Because plaintiffs have not demonstrated that the State cannot meet its burden of proving good faith with respect to the 1990 violation of the FLSA, their motion for summary judgment with respect to liquidated damages is denied as to the 1990 violation.

## IV

The State violated the FLSA in 1990 and 1992 by failing to pay plaintiffs promptly. Plaintiffs are entitled to liquidated damages with respect to the 1992 violation. However, plaintiffs have not established their entitlement to liquidated damages as to the 1990 FLSA violation. Thus, the sole remaining issue in this case is the appropriate measure of damages in connection with the 1990 violation.

Plaintiffs' motion for summary judgment is granted with respect to the State's liability under the FLSA in 1990 and 1992. Plaintiffs' motion for summary judgment on the issue of liquidated damages is granted in part and denied in part.

IT IS SO ORDERED.