**In re RAM MANUFACTURING, INC.**

**Civ. A. Nos. 85–1239, 85–2141, and 85–2797.**

United States District Court, E.D. Pennsylvania.

Dec. 26, 1985.

Thomas B. Rutter, Philadelphia, Pa., for Ram Mfg., Inc.

Kenneth F. Carobus, Philadelphia, Pa., for Chase Commercial Corp.

Gary Bressler, Philadelphia, Pa., for Gulf & Western Mfg. Co.

Fred Zimmerman, Pennsauken, N.J., Donald M. Collins, David Corujo, Philadelphia, Pa., for trustee.

## MEMORANDUM AND ORDER

BECHTLE, District Judge.

Presently before the court are three related appeals from bankruptcy court—C.A. 85–1239, C.A. 85–2141, C.A. 85–2797. All three appeals will be considered together.

FACTS

On April 29, 1980 the Debtor RAM Manufacturing, Inc. ("debtor") entered into a lease agreement with an attached option to purchase with appellant Chase Commercial Corporation ("Chase"). Under the agreement the debtor was to "lease" a computer and associated equipment (the "computer")

from Chase upon payment of $4,316.44 per month for sixty (60) months to begin on May 1, 1980, at the end of which time the debtor had the "option" to purchase the computer for $1.00. In 1980, Chase filed a financing statement with the State of Pennsylvania and in Bucks County, Pennsylvania, but no new financing statement was filed in 1981 when the computer was moved from Bucks County to Montgomery County, Pennsylvania. Chase does not dispute that it currently has no perfected security interest in the computer.

Prior to the filing of its petition for bankruptcy, the debtor defaulted under the "lease" agreement which prompted Chase to bring an action against the debtor in this Court claiming a failure to pay such monthly installments when due and requesting a money judgment and return of the computer.[1]

On January 7, 1983 the debtor filed for bankruptcy and on January 23, 1983 a trustee was appointed. On January 25, 1983, Chase filed an application in bankruptcy court compelling the trustee to adopt or reject the lease, a motion for advance payment of administrative rent for the use of the computer, and a motion for relief from the automatic stay so it could repossess the computer if administrative rent was not paid. On February 4, 1983, the trustee filed an objection and answer to Chase's application asking, in essence, that the trustee not be required to accept or reject the lease until a plan could be filed.

On March 10, 1983, the bankruptcy judge entered an order fixing April 7, 1983 as the time by which the trustee was to accept or reject the unexpired lease and reserving the question of administrative rent. The court further ordered that in the event the trustee failed to follow the court order, the trustee was to surrender the computer to Chase within five (5) days of such failure (i.e., on or before April 12, 1983).

Thereafter, the trustee apparently determined it had a need for the leased equip-

---

1. No substantial proceedings were carried on in the district court because of the automatic stay which was imposed when the bankruptcy petition was filed and in April of 1983 the district court matter was transferred to the bankruptcy court.

ment, at least for a time, and so on May 9, 1983 the attorney for Chase and the attorney for the trustee entered into the following stipulation which states, in pertinent part:

WHEREAS the Trustee has had to use *the creditors' equipment* in order to preserve and protect the Estate and

WHEREAS the Trustee will be unable to release the equipment until after May 30, 1983

THEREFORE, in consideration of the above premises, the time in which the Trustee may apply for authority to accept or reject the lease, which was set for April 7, 1983 is extended to May 20, 1983. [Emphasis added].

On May 20, 1983 the trustee filed an application to reject the executory contract which stated, in pertinent part:

"4. At the time of the filing of the [bankruptcy] Petition, the Debtor was in possession of a computer, several remote terminals and other peripheral equipment ... *belonging to Chase ... which was leased* to the debtor at a rate of $4,316.44 a month. According to the terms of the Lease, said Lease [was] due to expire sixty [60] months from May 1, 1980." [Emphasis added].

"5. The Trustee now believes that it would be in the best interests of the Estate to reject the Lease as of the date of the filing of the Petition in order to reduce the expenses of the Estate."

"6. The Trustee is obliged to pay Chase Commercial, upon this Court's approval of this application, the reasonable value of his post-petition use of said equipment."

On July 6, 1983, Chase filed a proof of claim asking for administrative rent for the trustee's use of the computer since the date of bankruptcy. On July 13, 1983, a hearing was held concerning the trustee's application to reject the lease and Chase's claim for administrative rent. This hearing was continued to allow the parties time to

submit briefs on the issue of how the administrative rent should be calculated. On July 26, 1983 the trustee filed a motion for summary judgment, for the first time arguing that the agreement between the parties was not a lease, but rather was an installment sales contract. On September 19, 1983 a hearing on the trustee's application to reject the lease was relisted for hearing but was continued to allow the bankruptcy judge time to rule on the motion for summary judgment. On March 29, 1984 the motion for summary judgment was denied. In April of 1984, notwithstanding the automatic stay, Chase entered into a lease contract with a new lessee, Television Technology Corporation ("T.T.C."), for the computer.

On July 30, 1984, the hearing on the application to reject the lease was reconvened. On January 11, 1985, the bankruptcy court, 45 B.R. 663 entered an order and an opinion finding, inter alia, that the "lease" was actually an installment sales contract, denying Chase's request for administrative rent, and entering judgment in favor of the trustee against Chase for Chase's rental of the computer to T.T.C.[2]

On January 21, 1985 Chase appealed from the January 11, 1985 order (C.A. 85–1239). On January 18, 1985, the trustee filed a motion to amend the January 11, 1985 order. A hearing was held on February 13, 1985 on the trustee's motion to amend. The bankruptcy judge issued an order on March 4, 1985 amending its January 11, 1985 order entering judgment in favor of the debtor against Chase in the amount of $13,198.80 which represented the amount collected by Chase from T.T.C. for the leasing of the computer equipment. On March 13, 1985 Chase appealed from the March 4, 1985 order (C.A. 85–2141). The trustee filed a motion for reconsideration of the March 4, 1985 order.

On April 9, 1985 the court granted, in part, the trustee's motion to reconsider the March 4, 1985 Order, ordering that the

2. The bankruptcy court also denied Chase's request for relief from the automatic stay, denied Chase's application for an order fixing the time

when the trustee must assume or reject the lease, and denied the trustee's request that Chase be held in contempt.

award to the trustee against Chase in the amount of $13,198.80 be amended to include interest at the rate of 10.8%, and that the January 11, 1985 order be amended so that any additional lease payments received by Chase from T.T.C. be immediately turned over to the trustee. On April 16, 1985 Chase appealed from the April 9, 1985 Order (C.A. 85–2797).

DISCUSSION

### I.

■ The lease agreement between Chase and the debtor was found to be a lease intended for security—a sale—by the bankruptcy court. The question of whether a document is a true lease or a lease intended for security has prompted much litigation.

The drafters of article nine of the UCC expressly provided in section 9–102(1)(a) that the scope of article nine includes all transactions, regardless of their form, that are "intended to create a security interest in personal property or fixtures." To this end, section 9–102(2) provides that article nine "applies to security interests created by contract including ... lease[s] ... intended as security." The inclusion of specific reference to leases intended as security was to make clear that article nine applied to transactions that, while disguised as leases, were in effect sales or conditional sales from the "lessor" to the "lessee." *American Standard Credit v. National Cement Co.*, 643 F.2d 248, 260 (5th Cir. 1981). A security interest is defined in section 1–201(37).[3] Two rules of construction are set out in subsections (a) and (b) of section 1–201(37).

While a purchase option does not in itself make a lease one intended for se-

curity (§ 1–201(37)(a)), a purchase option exercisable for no or nominal additional consideration "does make" the lease one intended for security (§ 1–201(37)(b)). We conclude from this that subsection (b) provides an exception to the general rule, whereby one fact in a given case takes on determinative significance. Thus, if a lease contains an option to purchase "for no additional consideration or for nominal consideration," it is *conclusively presumed to be "intended as security," without reference to other facts from which the opposite inference might be drawn.*

*In re J.A. Thompson & Son, Inc.,* 665 F.2d 941, 945–946 (9th Cir.1982) (emphasis added). This court agrees with the Ninth Circuit's reasoning. In the present case, the debtor's option to purchase the computer from Chase for one dollar was held by the bankruptcy court to be a nominal amount. Such a finding was reasonable. Therefore, under the rules of construction articulated in the subsections of section 1–201(37), the transaction was, as a matter of law, a sale.

### II.

■ Chase argues that notwithstanding the actual legal effect of the documents, the trustee is nevertheless bound by his May 9, 1983 stipulation and the judicial admissions found within the May 23, 1983 application to reject the lease, in which the trustee "admits" that the agreement was a lease. The general rule is that, judicial admissions and stipulations are binding upon the parties and should not be disregarded or set aside. *Marshall v. Emersons, Ltd.,* 593 F.2d 565, 568–69 (4th Cir. 1979); *New Amsterdam Casualty Co. v. Waller,* 323 F.2d 20, 24 (4th Cir.1963).

---

**3.** Section 1–201(37) provides, in pertinent part:
"Security interest" means an interest in personal property or fixtures which secures payment or performance of an obligation. The retention or reservation of title by a seller of goods notwithstanding shipment or delivery to the buyer (section 2–401) is limited in effect to a reservation of a "security interest." ... Unless a lease ... is intended as security, reservation of title thereunder is not a "security interest" ... Whether a lease is intended

as security is to be determined by the facts of each case; however, (1) the inclusion of an option to purchase does not of itself make the lease one intended for security; and (2) an agreement that upon compliance with the terms of the lease the lessee shall become or has the option to become the owner of the property for no additional consideration or for a nominal consideration does make the lease one intended for security.

When a stipulation or judicial admission is entered into under a mistake of law, however, the court may relieve the party from such admissions or stipulations. *Marshall v. Emersons, Ltd., supra*, 593 F.2d at 568; *New Amsterdam Casualty Co. v. Waller, supra*, 323 F.2d at 24; *United States v. Kulp*, 365 F.Supp. 747, 763 (E.D.Pa.1973).

■ Because this court has determined as a *matter of law* that the agreement between the debtor and Chase was, as of the time of its signing, a sale, any determination by the trustee to the contrary was a mistake of law. To bind the trustee to his mistaken belief would severely deplete the assets of the estate thereby prejudicing other creditors of the estate. Furthermore, since Chase, as a matter of law, was never entitled to retention of the computer, Chase was in no way prejudiced by the trustee's judicial admissions and stipulation. Consequently, the trustee is relieved of his stipulation and admissions. No further hearing on this matter is necessary. As such, Chase is not entitled to any administrative rent for the debtor's use of the computer because the computer belonged to the debtor.

### III.

An order was issued by the bankruptcy judge on March 4, 1985 awarding the debtor $13,198.80, the amount collected by Chase from T.T.C. pursuant to a lease. An April 9, 1985 order additionally awarded the debtor interest at the rate of 10.8%. These rulings by the bankruptcy judge were incorrect and must be reversed.

■ Chase is entitled to this money because it in good faith relied on the trustee's stipulation, judicial admissions and rejection of the lease that the computer in fact belonged to Chase, and therefore could be "re-leased" to another customer. Notwithstanding the automatic stay in force, the trustee could have petitioned for an injunction in the nature of a writ of mandamus against Chase. Adding together the facts of 1) the bankruptcy judge's delayed ruling; 2) the trustee's failure to pursue an injunctive remedy; 3) Chase's good faith belief in the trustee's stipulation, judicial admissions and rejection of the lease; and 4) no other creditors will be prejudiced because this money was not taken from the estate in a disgorgement proceeding but would have been money added to the estate; this court reverses the March 4, 1985 and April 9, 1985 orders of the bankruptcy judge and directs that the trustee pay Chase the $13,198.80 rental initially paid by T.T.C. to Chase, and the 10.8% interest assessed Chase by the bankruptcy court. All lease payments made by T.T.C. to Chase after January 11, 1985 and ordered turned over to the trustee in the April 9, 1985 order shall remain with the trustee.

### CONCLUSION

For the reasons stated above, in C.A. 85–1239 this court will affirm in part and reverse in part the bankruptcy court's January 11, 1985 order. The court wil affirm the denial of Chase's request for administrative rent and reverse the judgment in favor of the debtor as to the rental of the computer to T.T.C. As to C.A. 85–2141 and C.A. 85–2797 the court will reverse the March 4, 1985 order, and reverse in part the April 9, 1985 order. The initial judgment in favor of the trustee against Chase for $13,198.80 on March 4, 1985 and the judgment for 10.8% interest on April 9, 1985 will be reversed. Judgment in favor of Chase will be entered for $13,918.80 at 10.8% interest.

An appropriate Order will be entered.

### ORDER

AND NOW, TO WIT, this 26th day of December, 1985, for the reasons stated in the accompanying Memorandum, IT IS ORDERED as follows:

1. The bankruptcy court's January 11, 1985 Order is affirmed in part and reversed in part. The court affirms the denial of Chase's request for administrative rent and reverses the judgment in favor of the debtor as to the rental of the computer to T.T.C.

2. The bankruptcy court's March 4, 1985 Order is reversed.

3. The bankruptcy court's April 9, 1985 Order is affirmed in part and reversed in part. The court affirms that all payments made by T.T.C. to Chase after January 11, 1985 be turned over immediately to the Trustee and reverses the judgment for 10.8% interest.

4. IT IS ORDERED that judgment be and the same is hereby entered in favor of Chase in the amount of $13,918.80 at 10.8% interest, such interest to be calculated from March 4, 1985.