OPINION
ERVIN, Chief Judge:
Barbara Johnston Fowler appeals the district court’s imposition of judgment notwithstanding the verdict (“JNOV”) on her claim under the Equal Pay Act, 29 U.S.C. § 206(d). She also disputes various rulings of the district court relevant to the issue of damages. We hold that JNOV was improperly entered on Fowler’s claim, and we remand the case to the district court for further proceedings on the issue of damages.
I.
Fowler is a thirty-three year old woman with a Masters degree in Civil Engineering. In March 1987, Land Management Groupe, Inc. (“LMG”), a real estate development company in Northern Virginia, hired Fowler as a Project Manager. Fowler’s starting salary was $32,000 a year. Fowler worked for LMG for approximately three years until she was laid off in February 1990. During that time, Fowler attained the position of Vice President of Building Development. Her annual salary at termination was $60,000.
Following her termination, Fowler filed a claim with the Equal Employment Opportunity Commission (“EEOC”) charging that she had been discriminated against in her employment in violation of the Equal Pay Act and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-5. EEOC notified Fowler that she was free to pursue the action on her own behalf.
Fowler filed a two count complaint in the Eastern District of Virginia on November 15, 1990, charging violations of the Equal Pay Act and Title VII. The defendants were LMG; John Groupe, IV, President of LMG; John Long, partial owner of LMG; and Long Enterprises, Inc. and Long Commercial, Inc., alleged “alter-egos” of LMG. The case went to trial on August 12, 1991 — the Equal Pay Act claim to a jury, the Title VII claim to the judge. At the conclusion of Fowler’s case, the court directed a verdict in favor of John Long, Long Enterprises, Inc., and Long Commercial, Inc. The Equal Pay Act claim was submitted to the jury which found in favor of Fowler. The trial court, however, finding that “[t]he case was totally absent of any evidence at all of sexual discrimination,” granted the defendants’ motion for JNOV. For the same reason, the trial court also found against Fowler on the Title VII claim. Fowler appeals the grant of JNOV, but does not appeal the adverse decision on the Title VII claim.
II.
The Equal Pay Act states:
No employer having employees subject to any provisions of this section shall discriminate ... between employees on the basis of sex by paying wages to employees ... at a rate less than the rate at which he pays wages to employees of the opposite sex ... for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions, except where such payment is made pursuant to (i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) *161 a differential based on any other factor other than sex____
29 U.S.C. § 206(d). Under this provision, a female plaintiff bears the burden of proof of establishing a prima facie case by showing that (1) her employer pays her a lower wage than a male counterpart (2) for “equal work on jobs the performance of which requires equal skill, effort and responsibility.” See Keziah v. W.M. Brown & Son, Inc., 888 F.2d 322, 324 (4th Cir. 1989). Once the prima facie case is-established, the burden shifts to the defendant to show, by a preponderance of the evidence, that the wage differential resulted from one of the allowable causes enumerated by the statute. Id.
In reviewing a JNOV, we must view the evidence in the light most favorable to the non-moving party. See, e.g., Persinger v. Norfolk & Western Ry. Co., 920 F.2d 1185, 1187 (4th Cir.1990). JNOV is appropriate only when “there is no legally sufficient evidentiary basis for a reasonable jury to have found for [the non-moving] party....” Fed.R.Civ.P. 50(a)(1).
In this case LMG concedes that there was sufficient evidence for a reasonable jury to conclude that Fowler had succeeded in establishing her prima facie case. The evidence shows that another Vice President of the company, Bruce Reese, was hired six months after Fowler. Reese’s starting annual salary was $62,000 (compared to Fowler’s $32,000). At the time LMG terminated Fowler’s employment, Reese’s annual salary was $73,500 (compared to Fowler’s $60,-000). At trial, LMG strongly contested whether the positions held by Fowler and Reese were “equal work requiring equal skill, effort and responsibility.” While LMG continues to believe that the weight of the evidence favored its position, it admits that there was sufficient conflicting evidence to support a jury determination to the contrary.
LMG does contend, and the judge below agreed, that the evidence as to nondiscriminatory justification was so overwhelming that no reasonable jury could have found that LMG had not met its burden of rebutting the prima facie case.. LMG points to various aspects of the trial testimony which established that: (1) Reese had certain professional qualifications that Fowler did not possess (he possessed an engineer’s license and a surveyor’s license); :(2) Reese had greater practical experience; (3) Reese’s expertise in site preparation and zoning-were more useful to the company than Fowler’s expertise in building construction because the majority of LMG’s properties were not yet undergoing construction; (4) Reese’s activities generated a greater share of the company’s profits than did Fowler’s activities; and (5) Reese was considered a “more important” employee of LMG.
While these justifications are persuasive, we do not believe they rise to such an overwhelming level that no reasonable jury could find that the pay differential was unjustified. Contradicting LMG's position, several LMG employees testified that they discerned no, difference in the respective tasks performed by Reese and Fowler or in the degree of authority that they appeared to exercise on behalf of the company. In contrast to Reese’s greater experience, Fowler possessed a higher level of formal education (Fowler had a Masters degree in Civil Engineering; Reese did not complete college). Furthermore, there is no evidence that Reese was ever called upon to use his engineering or surveying licenses while in the employ of LMG. Viewed in the light most favorable to Fowler, we believe the evidence adequately supports the jury’s verdict.
LMG argues that it is entitled to JÑOV because Fowler was unable to present any direct evidence of sexual discrimination at the company. Contrary to LMG’s assertions, however, direct evidence of sexual discrimination is not required to counter the contention that a pay disparity is justified. See, e.g., Maxwell v. Tucson, 803 F.2d 444, 445-46 (9th Cir.1986) (“discriminatory intent is not part of the employee’s ... burden [of proof] under the Equal Pay Act”). The jury was within its discretion to decline to credit LMG’s evidence of justification on the strength of Fowler’s prima facie case alone. Fowler was not required *162 to adduce direct evidence of discrimination, above and beyond the prima facie case, to counter LMG’s assertion of justification.
In short, we hold that the question of whether the pay differential between Reese and Fowler was adequately justified by nondiscriminatory factors was appropriately a matter for determination by the jury. The district court erred in substituting its evaluation of the evidence for that of the jury, and, as a result, we reverse the district court’s grant of JNOV.
III.
Fowler raises several issues related to the proper measure of damages. First, she contends that the district court erred in determining that LMG had not “willfully” violated the provisions of the Equal Pay Act. A finding of “willfulness” would have extended the applicable statute of limitations from, two years to three years, and thereby allowed Fowler to recover damages for an extra year of unequal wages. See 29 U.S.C. § 255(a). Fowler contends that the issue of “willfulness” is a question of fact that should have been submitted to the jury, and that, therefore, the trial judge erred by ruling on the issue himself.
Apparently,- no reported case has decided whether the resolution of “willfulness,” for purposes of section 255(a), is properly a question for the judge or the jury. Several published decisions have reviewed the merits of a “willfulness” determination under this statute without regard to whether judge or jury made the determination and without discussion of which entity should properly be vested with the decision-making responsibility. Compare, e.g., McLaughlin v. Richland Shoe Co., 486 U.S. 128, 108 S.Ct. 1677, 100 L.Ed.2d 115 (1988) (reviewing trial judge’s finding of “willfulness”) with, e.g., E.E.O.C. v. Delaware Dept. of Health and Social Services, 865 F.2d 1408 (3rd Cir.1989) (reviewing jury determination of “willfulness”). In E.E.O.C. v. City of Detroit Health Dept., 920 F.2d 355, 357-58 (6th Cir.1990) (“Detroit Health”), the Sixth Circuit noted the divergent practices of different courts on this topic, but found resolution of the issue to be unnecessary to the disposition of its case.
In general, issues of fact bearing on the application of a statute of limitations are submitted, as are other issues of fact, for determination by the jury. See Brown v. American Broadcasting Co., 704 F.2d 1296, 1304 (4th Cir.1983). LMG argues that the “willfulness” question is distinguishable from other factual determinations because the district court must resolve an issue similar to the “willfulness” question when evaluating whether or not to award liquidated damages. ■ Under the terms of 29 U.S.C. § 260, an employer in violation of the Equal Pay Act will be liable for liquidated damages, equal to and in addition to compensatory damages, unless the employer demonstrates “to the satisfaction of the court that the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that his act or omission was not violative of the [Act].” LMG contends that the trial court’s inquiry into an employer’s “good faith” is synonymous with a determination of the employer’s “willfulness” as that term has been interpreted by the Supreme Court. See McLaughlin, 486 U.S. at 132, 108 S.Ct. at 1681. LMG argues that, because the trial judge is empowered, by statute, to rule on “good faith” for purposes of liquidated damages, allowing the jury' to assess “willfulness” for purposes of the statute of limitations would “lead to inconsistencies and conflicts.” Ap-pellee’s Br. at 26.
This argument is unconvincing. Even if the “good faith” test for assessing liquidated damages is synonymous with the “willfulness” test for extending the statute of limitations, we do not discern any negative ramifications that would result from inconsistent determinations on the issues by the judge and the jury. The consequences of the judge’s decision are entirely separate from the consequences of the jury’s determination, and it is entirely acceptable that the two fact-finders reach conflicting conclusions on the issues.
In fact, a better argument would be the converse of LMG’s position: that once the *163 jury had passed on “willfulness” for purposes of the statute of limitations, the judge should be bound by that finding in evaluating whether or not to award liquidated damages. As a result, the jury would make the dispositive finding with regard to both the statute of limitations and liquidated damages issues. See Detroit Health, 920 F.2d at 358. It is well settled that, on the basis of the Seventh Amendment right to civil trial by jury, “[a]ny actual issues necessarily and actually decided by the jury are foreclosed under settled principles of collateral estoppel from subsequent reconsideration by the district court.” Ohio-Sealy Mattress Manufacturing Co. v. Sealy, Inc., 585 F.2d 821, 844 (7th Cir.1978), cert. denied, 440 U.S. 930, 99 S.Ct. 1267, 59 L.Ed.2d 486 (1979); see also Lindsey v. American Cast Iron Pipe Co., 810 F.2d 1094, 1097-98 (11th Cir.1987).
Nevertheless, we find the present situation distinguishable from this line of cases because of the explicit language of section 260, expressly vesting discretion to award liquidated damages in the hands of the trial judge. We do not believe that, in light of this clear delegation of authority, Congressional intent would be effectuated by a scheme in which, in every case, the trial court’s discretion to award liquidated damages would be completely constrained by the jury’s determination on “willfulness” for purposes of the statute of limitations.
We do not believe that allowing the judge and jury to reach divergent conclusions on the issues of “willfulness” and “good faith” impermissibly infringes on the parties’ right to a jury trial. The decision on whether or not to assess liquidated damages under section 260, after “good faith” has been established, rests largely on equitable considerations. See Martin v. Detroit Marine Terminals, Inc., 189 F.Supp. 579, 582 (E.D.Mich.1960). It is firmly established that the Seventh Amendment right to trial by jury attaches to civil actions that are legal, not equitable, in nature. See, e.g., Granfinanciera, S.A. v. Nordberg, 492 U.S. 33, 42, 109 S.Ct. 2782, 2790, 106 L.Ed.2d 26 (1989). Accordingly, we conclude that the Seventh Amendment is not infringed by allowing the trial court to make a factual finding on “good faith,” even if that finding conflicts with a jury’s prior evaluation of an employer’s “willfulness.”
The upshot of this rather lengthy discussion is that there is no reason that the issue of “willfulness” should be treated any differently from other factual determinations relating to application of a statute of limitations that are routinely submitted to the jury. Thus, we agree with Fowler’s contention that it was error for the district court in this case to refuse to submit the “willfulness” issue to the jury.
IV.
Next, Fowler contends that, even assuming that the issue of liquidated damages was properly within the province of the trial judge, the judge erred in his determination not to award such damages. As noted above, the district court has the discretion to decline to award liquidated damages if the employer’s actions were “in good faith and ... he had reasonable grounds for believing that his act or omission was not violative of the [Act].” 29 U.S.C. § 260. This determination is subject to review for abuse of discretion. See Burnley v. Short, 730 F.2d 136, 140 (4th Cir.1984). Here, there is more than adequate evidence in the record to support a conclusion that throughout the period of pay disparity, the management of LMG had a good faith and reasonable belief that the disparity was justified by the fact that Fowler and Reese did not perform “equal work” for the company. The fact that the jury ultimately disagreed with LMG on this issue does not necessarily dispel the reasonableness of that belief. Thus, we find that the district court’s refusal to grant liquidated damages was not an abuse of discretion, and accordingly we affirm that ruling.
V.
Finally, Fowler disputes the district court’s grant of a directed verdict in favor of defendants John Long, Long Enterpris *164 es, Inc. and Long Commercial, Inc. The district court found that, while Long owned a substantial interest in LMG, there was no connection between either Long, Long Enterprises, Inc. or Long Commercial, Inc. and Fowler. According to the court, “they have nothing to do with this plaintiff____ There has got to be some intertwining as to this case and what was going on in this case.” J.A. at 122A-1.
Before the district court, Fowler argued exclusively that Long and his other companies were “alter egos” of LMG. On appeal, Fowler has changed her theory, arguing instead that Long and the other companies were part of a “single enterprise” as defined by 29 U.S.C. § 203(r). Because this theory was not advanced before the district court, and the district court did not, therefore, have an opportunity to make factual findings in relation to the “single enterprise” theory, we deem the argument to be waived and do not address it on appeal. See National Wildlife Fed’n v. Hanson, 859 F.2d 313, 318 (4th Cir.1988) (absent “very limited circumstances,” a court of appeals will not address an argument not raised before the district court). We do not find that the failure to consider Fowler’s newly presented argument results in. “plain” error or a “miscarriage of justice.” Id. As LMG correctly contends, it is by no means clear from the record that Long and his companies met the requirements of common control or common business purpose with LMG to satisfy the statutory definition of a single enterprise. In the absence of such clear evidence, and lacking any specific factual findings by the district court, this court is in no position to address Fowler’s single enterprise argument.
VI.
In sum, we reverse the district court’s grant of JNOV and remand the case with instructions to the district court to reinstate the jury’s verdict on liability. In addition, we hold that the district judge erred by determining the issue of “willfulness” himself, rather than submitting the issue to the jury. Further proceedings must be held, before a jury, to determine whether LMG’s actions were “willful,” making the three-year statute of limitations applicable. Finally, we affirm the district court’s rulings denying liquidated damages and directing a verdict in favor of John Long, Long Enterprises, Inc., and Long Commercial, Inc.
AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.