**Leon A. MUSTON, Plaintiff,**

v.

**MKI SYSTEMS, INC., Defendant.**

**Civil Action No. 96–299–A.**

United States District Court,
E.D. Virginia,
Alexandria Division.

Jan. 10, 1997.

Sidney E. Rab, Rice & Stallknecht, P.C., Woodbridge, VA, for Plaintiff.

Thomas R. Folk, Hazel & Thomas, P.C., Falls Church, VA, for Defendant.

## MEMORANDUM OPINION

ELLIS, District Judge.

This is an action under the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA"), in which the plaintiff seeks to recover overtime wages allegedly due him from his former employer. It is before the Court on cross motions for summary judgment.

## I.

Defendant MKI Systems, Inc. ("MKI") is a small government contractor that provides professional services to the U.S. Marine Corps, primarily in the area of systems analysis. Most of MKI's employees are retired Marines. Indeed, plaintiff Leon A. Muston came to MKI in July 1992 upon his retirement from 20 years of Marine Corps service. He was hired as a Senior Systems Analyst with a starting salary of $27,000 annually. After one year, Muston's salary was increased to $29,000. In addition, he received an employee performance review. This review listed Muston's position title as "Senior Logistics Analyst". It also indicated that he held a supervisory position and, accordingly, included an evaluation of his management skills. Muston signed this performance review, signifying that he agreed with its contents.

While at MKI, Muston worked, for the most part, as part of a team whose primary responsibility was to provide consulting services to the Marine Corps Systems Command ("MARCORSYSCOM") at Quantico, Virginia. While there is disagreement over the precise scope of Muston's duties and responsibilities, it is clear that Muston's role involved providing logistical analysis concerning the acquisition, operation and servicing of equipment necessary for military operations. More particularly, Muston's duties involved developing recommendations for the types, quantities, maintenance and operation of equipment needed for specific military operations.

During his employment at MKI, Muston worked scheduled hours and was required to record his work hours. This record-keeping was apparently required on MKI's government projects. Notwithstanding the fact that MKI tracked Muston's hours, MKI considered Muston to be a salaried, not an hourly, employee. As a salaried employee, Muston never had deductions from his pay based on the quantity of his work, with one exception. This exception occurred in January 1994, when Muston took five days of leave without pay. MKI's policy manual informed salaried employees that:

> [w]hen an employee works less than the full amount of hours during a particular pay period, ... as a result of taking leave without pay, pay will be calculated based on the percentage of working hours that an employee actually worked in that pay period.

Thus, in accordance with this provision, Muston's pay was reduced for the five days, or forty hours, he was on leave without pay.

Muston's employment with MKI terminated on May 3, 1994, owing in part to a reduction in contract requirements.[1] Thereafter, on March 6, 1996, Muston filed this complaint, alleging that MKI failed to pay him overtime wages for weeks in which he

---

1. According to MKI, Muston's 1994 embezzlement conviction also played a role in the decision to terminate Muston. It appears that MKI's contracts with the Marine Corps require employees to hold a security clearance and that Muston's felony conviction jeopardized his clearance. The accuracy of this account of Muston's termination is immaterial to the disposition of the questions at bar.

worked more than 40 hours, in violation of FLSA.[2] At the close of discovery, Muston moved for summary judgment solely on the question of whether the alleged FLSA violation indeed occurred. The heart of this question is whether Muston, when employed by MKI, was exempt from FLSA wage and hour restrictions because he was a salaried executive, professional or administrative employee. After oral argument, the matter was taken under advisement and the parties were directed to submit additional memoranda addressing the applicable statute of limitations, and the appropriateness of liquidated damages. These submissions were received, with both parties then moving for summary judgment on these questions, as well. As a part of its submission, MKI also filed a cross motion for summary judgment on the original issue of Muston's coverage under FLSA overtime provisions. Thus, the matter comes before the Court on cross applications for summary judgment that raise three issues:

(1) whether Muston was exempt from the overtime requirements of FLSA because he was a "salary basis" executive, administrative or professional employee of MKI;

(2) whether MKI's violation of FLSA was willful such that the usual two year limitations period should be increased to three years; and

(3) whether MKI's classification of Muston as exempt from FLSA was in good faith with an objectively reasonable basis such that liquidated damages are inappropriate.

## II.

FLSA requires, *inter alia*, that covered employers pay their employees overtime wages, at the rate of time-and-a-half, for hours in excess of 40 worked in a single week. Yet, FLSA also contains what are commonly referred to as the "white-collar exemptions" for workers who are (i) executive, (ii) administrative, or (iii) professional employees. *See* 29 U.S.C. § 213(a)(1). Employees who fall into any of these three exempt categories need not be paid premium wages, *i.e.*, time and a half, for hours worked over 40 hours in a week. Department of Labor ("DOL") implementing regulations authoritatively elucidate these exemptions. *See* 29 C.F.R. Part 541; *see also* 29 U.S.C. § 213(a)(1) (relevant provisions of FLSA do not apply to "any employee employed in a ['white-collar'] capacity . . . (as such terms are defined and delimited from time to time by regulations of the Secretary.")); *Shockley v. City of Newport News*, 997 F.2d 18, 21 (4th Cir.1993) (DOL regulations define what constitutes "white collar" employee for purposes of FLSA exemptions). Thus, to benefit from any one of the three exemptions, an employer must demonstrate by clear and convincing evidence that an employee meets the DOL regulatory definition of the exemption. *See Shockley*, 997 F.2d at 21–22.

■ DOL regulations specify the various requirements, including education, training, and employment responsibilities, an employee must meet for inclusion in each of the three white collar exempt categories. Importantly, one requirement common to all three white collar exemptions is that they are available only for employees compensated on a "salary basis". *See Shockley*, 997 F.2d at 21.[3] Thus, to classify an employee as exempt from FLSA overtime requirements, an employer must, as a threshold matter, demonstrate by clear and convincing evidence that the employee was paid on a salary basis. *Id.* If this threshold requirement is met, an em-

---

**2.** Subsequent to the termination of employment with MKI, Muston began working for Radian, Inc., a competitor of MKI's. MKI suggests that the motivation for this FLSA claim is not the quite modest sum of money involved, but rather a desire to improve Radian's competitive position vis a vis MKI. Whatever the accuracy of this allegation, it is immaterial to the disposition of the questions at bar.

**3.** In some circumstances, employees paid on a fee basis may qualify for the administrative or professional exemption. *See* 29 C.F.R. §§ 541.2(e)(1), 541.3(e); *see also Shockley*, 997 F.2d at 21. A fee basis arrangement is "characterized by the payment of an agreed sum for a single job regardless of the time required for its completion." 29 C.F.R. § 541.313. Because MKI does not contend Muston was paid in this manner, the circumstances in which payment on a fee basis is sufficient for an employee's inclusion in a white collar exemption category are not relevant here.

ployer must then further demonstrate by clear and convincing evidence that an employee was employed in a professional, administrative, or executive capacity. *Id.* In the instant matter, if MKI cannot meet the burden of demonstrating that Muston is a salaried administrative, professional or executive employee, then none of the white collar exemptions apply, and Muston is entitled to summary judgment on the issue of his coverage under FLSA overtime provisions.

## A. Salary Basis

To satisfy the "salary basis" requirement, an employee must receive as compensation a pre-determined amount constituting all or part of his compensation, "which amount is not subject to reduction because of variations in the quality or quantity of the work performed." 29 C.F.R. § 541.118(a). Furthermore, subject to specific exceptions, "the employee must receive his full salary for any week in which he performs any work without regard to the number of days or hours worked." *Id.*

In support of his contention that MKI did not compensate him in accordance with this definition, Muston points to MKI's policy manual § 2001 concerning calculation of pay, which states:

> Each hourly employee is paid for the total hours reported on his/her time sheet. Each salaried employee is paid his/her semimonthly salary provided the total hours reported on his/her time sheet equal at least the total amount of hours in the full pay period. **When an employee works less than the full amount of hours during a particular pay period,** due to initial employment, termination, or as a result of taking leave without pay, **pay will be calculated based on the percentage of working hours that an employee actually worked in that pay period.**

(emphasis added). Under this provision, employees docked for unpaid leave during a pay

period will have their pay reduced according to the percentage of the total pay period hours missed. Thus, an employee's level of compensation is not guaranteed; rather, by the plain terms of the policy language it is "subject to reduction" for any hours the employee is absent on unpaid leave.

MKI argues that § 2001, correctly interpreted, does not make the salary of employees, including Muston, "subject to" impermissible deductions. Specifically, MKI contends that the three circumstances listed in § 2001 in which pay is to be calculated based on a percentage of working hours directly correspond to deductions allowed by DOL regulations: (i) initial employment, (ii) termination, and (iii) leave without pay.[4] This is correct with respect to the first two circumstances listed in § 2001, but it is not correct as to the third. Thus, § 2001 calls for deductions to be made from a salaried employee's compensation during the employee's (i) initial and (ii) terminal weeks, and the regulations permit such deductions to be made without jeopardizing an employee's "salary basis" status. But the "salary basis" regulations do not permit leave without pay deductions to be made in the manner prescribed in § 2001.

▮ Specifically, the regulations provide that "[d]eductions may be made ... when the employee absents himself from work *for a day or more* for personal reasons, other than sickness or accident." 29 C.F.R. § 541.118(a)(2) (emphasis added). Deductions of this sort, in other words, must be for whole days. Thus, the heart of Muston's "salary basis" argument is his contention that MKI's pay deduction policy with respect to leave without pay, set forth in § 2001, subjects him to fractional day pay deductions prohibited by the regulations. *See* 29 C.F.R. § 541.118(a), (c). This contention is well-founded. In pellucidly clear language, § 2001 states that salaried employees who take leave without pay will have their pay

---

**4.** Title 29 C.F.R. § 541.118 enumerates several exceptions in which an employee need not receive his full salary for a week in which he performs any work. Thus, an employer may permissibly make deductions for: (1) absences for a day or more for personal reasons, other than sickness or accident; (2) absences for a day

or more because of sickness or disability, provided the deductions are made in accordance with a provision providing compensation for loss of salary occasioned by these conditions; and (3) the proportion of time not worked during an employee's initial or terminal week. 29 C.F.R. § 541.118(a), (c).

calculated "based on the percentage of working hours the employee actually worked in that pay period."[5] Given this plain language, it necessarily follows that in certain circumstances, an employee's pay can be reduced for periods of leave without pay that involve fractional days.[6] This is contrary to the definition of salaried employee in FLSA's implementing regulations. *See id.*

Although the plain language of MKI's policy manual does not limit an employee's salary deductions to those permissible under the implementing regulations, MKI nonetheless argues that it is entitled to the benefit of the white collar exemptions because the policy manual, as actually applied, conforms to the regulations. In this regard, MKI contends, and the record reflects, that in actual practice no employee has ever been docked salary for fractions of leave days. This is decisive, MKI contends, because actual practice trumps the language of a policy in this context.

■ Courts considering this issue have split on whether the actual application of an employer's policy is controlling where the practice contradicts the policy language. The majority of circuits considering this question have held that wherever the employee is "subject to" an impermissible deduction, the exemption is lost, regardless of whether an impermissible deduction is ever made.[7] In *Abshire*, the seminal case for this view, the Ninth Circuit found the employer's argument that no deductions had actually been made "both misleading and irrelevant"; the dispositive factor in that court's view was whether the policy made an employee's pay "subject to" deduction. *Abshire*, 908 F.2d at 487. The minority view, by contrast, allows the actual practice with respect to deductions to trump the language of the policy. *See Atlanta Prof. Firefighters Union Local 134 v. Atlanta*, 920 F.2d 800 (11th Cir.1991); *Harris v. District of Columbia*, 709 F.Supp. 238 (D.D.C.1989).

In *Michigan Dep't of Corrections*, the Sixth Circuit refined the *Abshire* analysis. Like *Abshire*, the Sixth Circuit focused on the language of the policy rather than its actual application, finding this approach (1) more consistent with the statutory language, and (2) more practical, given that:

> [e]mployees subject to reduction in pay will, of course, attempt to avoid those reductions by juggling schedules and sacrificing non-work opportunities. Simply because a reduction in pay has never been applied does not mean that the employee has not been affected by the policy subjecting the employee to pay reduction.

*Michigan Ass'n of Governmental Employees*, 992 F.2d at 86. Thus, like *Abshire*, the Sixth Circuit held that the policy itself is determinative of whether an employee is subject to impermissible reductions. Yet the *Michigan Dep't of Corrections* panel, unlike *Abshire*, did not conclude that actual practice was always irrelevant. Instead, the Sixth Circuit held that where the policy language is infected with ambiguities, courts should look to the application of the policy to determine whether that policy should be construed as subject-

---

5. A pay deduction pursuant to the "leave without pay" clause in § 2001 is clearly triggered (i) where an employee takes leave without pay for personal reasons after paid vacation is exhausted, and (ii) where an employee exhausts allotted sick leave and elects to allocate additional absences due to illness to leave without pay. Muston further contends that a "leave without pay" pay deduction is triggered where an employee is absent for jury/witness duty or military duty in excess of amounts of leave allotted by MKI for those purposes. The resolution of this further contention is not necessary given the clear application of MKI's policy manual § 2001 in other circumstances.

6. Consider, for example, the § 2001 pay deduction resulting where an employee takes leave without pay commencing on noon of a Friday and extending throughout the following week. The application of the plain language of § 2001 would result in a deduction for a fractional day, namely, the hours missed on Friday afternoon.

7. *See, e.g., Abshire v. County of Kern*, 908 F.2d 483 (9th Cir.1990), *cert. denied*, 498 U.S. 1068, 111 S.Ct. 785, 112 L.Ed.2d 848 (1991); *Kinney v. Dist. of Columbia*, 994 F.2d 6 (D.C.Cir.1993); *Michigan Ass'n of Governmental Employees v. Michigan Dep't of Corrections*, 992 F.2d 82, 86 (6th Cir.1993); *Klein v. Rush–Presbyterian–St. Luke's Medical Center*, 990 F.2d 279 (7th Cir. 1993); *Martin v. Malcolm Pirnie, Inc.*, 949 F.2d 611 (2d Cir.1991), *cert. denied*, 506 U.S. 905, 113 S.Ct. 298, 121 L.Ed.2d 222 (1992); *see also Hawks v. City of Newport News*, 707 F.Supp. 212, 214 (E.D.Va.1988).

ing employees to impermissible deductions. *Id.*

On the whole, the reasoning of the Sixth Circuit is more persuasive than that of other courts addressing this issue. This conclusion is not foreclosed in this circuit, which has not yet expressly adopted a position on the relevance of an employer's actual deduction practices in determining whether an employee is "subject to" impermissible deductions.[8] Thus, the better approach to the question presented, and the approach adopted here, is that an employer loses the ability to claim a FLSA exemption for any employees who are "subject to" impermissible deductions, even if the employer has not yet made any such deductions. In other words, a court looks first to the policy's plain language. If that language is unambiguous and allows impermissible deductions, then the inquiry is complete, and the white collar exemptions are lost. Only if the language of the policy is ambiguous, will the employer's actual practice with respect to deductions be considered to give meaning to the terms of an ambiguous policy. *See, e.g., Michigan Dep't of Corrections*, 992 F.2d at 86.

In the event that MKI's actual practice does not trump its policy language, MKI contends, in the alternative, that even under *Abshire* its application of § 2001 is relevant because there is ambiguity in the Policy Manual's leave without pay provisions. The ambiguity, according to MKI, is created by reading § 2001, which describes how pay deductions are calculated for leave without pay, with § 2004, which defines certain requirements for leave without pay, namely, that such leave (1) be "approved by the President" and (2) "not cause substantial administrative difficulties".[9] By MKI's lights, § 2004 requirements are inconsistent with pay deductions for absences of less than one full day. This argument is unconvincing. While the § 2004 provisions arguably contemplate longer-term leave periods, nothing in § 2004 contradicts, or is inconsistent with, the terms of § 2001 that allow fractional day pay deductions for certain periods of leave without pay.[10] Put differently, § 2004 does not require reading the pay deduction provision of policy § 2001 in a manner inconsistent with its plain language, namely, that deductions can be made for absences based on the percentage of hours, not days, worked.[11] And it is indisputable that hourly deductions subject Muston to the possibility of impermissible deductions for fractional days of leave without pay.

---

8. To be sure, in *Shockley v. City of Newport News*, the Fourth Circuit cited *Abshire's* holding on other issues with approval, and stated that an employee could lose an exemption where evidence showed that an employer's policy "allowed" impermissible pay deductions. *Shockley*, 997 F.2d at 24. But the precise question of whether the application of a policy can trump that policy's plain language was not before the *Shockley* panel and in that case, moreover, it is not clear whether salary deductions had actually been made. *See Quirk v. Baltimore County, Maryland*, 895 F.Supp. 773, 782–83 (D.Md.1995) (finding no Fourth Circuit authority on adoption of *Abshire* because "it is not clear whether any plaintiff in *Shockley* actually was docked"). Thus, while *Shockley* provides some indication that the Fourth Circuit approves of *Abshire*, it provides no clear authority on the relevance of an employer's policy application where that application contradicts a policy manual's clear language.

9. This provision also promises that MKI will "make every effort to reserve the employee's job position until the employee returns to work."

10. See *supra* note 6.

11. While the actual deduction applied in this case for leave without pay in January 1994 was for five whole days of personal leave, it nonetheless supports the conclusion that Muston was paid based on hours worked. This is so because his pay for the period during which this leave was taken does not represent the **percentage of whole days worked** or on paid leave in the period, *i.e.*, 6 of 11, but rather represents the **percentage of hours worked** or on paid leave in the period, *i.e.*, 53 of 93. In Muston's case, he was paid more than he would have been entitled to had his salary been reduced on a full day basis. ($\%_{11}$ = 54.55% of total pay, or $659.62, compared with $^{53}\%_{93}$ = 56.99% of total pay, or $688.62). Significantly, this is because Muston worked more than eight hours in each of the five days he worked in the pay period. Had Muston worked seven hours each day, then MKI's calculation would have led to a pay reduction greater than that attributable to the whole days missed. In this event, Muston clearly would be subject to a reduction in pay because of the quantity of work performed in an increment of less than one whole day, a result contrary to the regulatory definition of a "salary basis" employee.

In sum, the leave without pay provision embodied in § 2001 of MKI's policy manual is unambiguous. It follows that MKI's actual practice in making pay deductions under § 2001 is irrelevant. And because the plain language of § 2001 subjects Muston to pay deductions for hours of unpaid leave taken in a pay period, he is not paid on a "salary basis" as that term is defined in FLSA implementing regulations. *See* 29 C.F.R. § 541.118(a)(2). Thus, MKI cannot meet the threshold requirement for demonstrating that Muston falls within any of the three white collar exemptions and, *a fortiori*, MKI cannot show by clear and convincing evidence that Muston is exempt from the coverage of FLSA. Accordingly, it is not necessary to consider whether Muston's position and duties made him an executive, professional or administrative employee.[12]

## B. Window of Correction

In the alternative, MKI argues that it is not liable under FLSA because it has availed itself of the "window of correction" allowed by 29 C.F.R. § 541.118(a)(6). This regulatory provision provides, in part:

> [W]here a deduction not permitted by these interpretations is inadvertent, or is made for reasons other than lack of work, the exemption will not be considered to have been lost if the employer reimburses the employee for such deductions and promises to comply in the future.

Thus, MKI contends that if it violated FLSA, it did so inadvertently, and promises to comply in the future with FLSA regulations as they apply to those in Muston's former position.

This argument fails; it improperly equates an inadvertent deduction with the inadvertent adoption of a policy that makes employees subject to impermissible deductions. Thus, courts in these circumstances have uniformly rejected this "window of cor-

rection" argument. *See, e.g., Abshire,* 908 F.2d at 489 ("window" is designed to remedy inadvertent docking, not to cure failures in policy); *Martin,* 949 F.2d at 616 (same). The "window of correction" is intended to be used where an employer, through inadvertence or error, "makes a one-time improper deduction and then corrects its error." *Abshire,* 908 F.2d at 489. MKI's policy manual does not fit this description. It was a policy for all employees, not a "one-time improper deduction". In these circumstances, no deduction could be fairly be termed "inadvertent" within the meaning of the "window of correction" regulation.

In sum, MKI's leave without pay provision clearly subjects employees to impermissible deductions, a defect beyond the curative powers of the "window of correction" provision. Thus, Muston is not exempt from the protection of FLSA, and is entitled to summary judgment on the issue of his coverage under FLSA overtime provisions for the relevant time period.

## III.

Ordinarily, damages for a denial of overtime compensation to a non-exempt employee are limited by the two-year statute of limitations found in FLSA. 29 U.S.C. § 255; *McLaughlin v. Richland Shoe Co.,* 486 U.S. 128, 135, 108 S.Ct. 1677, 1682–83, 100 L.Ed.2d 115 (1988). Yet, where a plaintiff can demonstrate that defendant's FLSA violation was willful, a three year statute of limitations is appropriate. 29 U.S.C. § 255(a).[13] The Supreme Court has defined this willfulness standard as requiring proof that "the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute." *Id.* at 133, 108 S.Ct. at 1681; *see also Truslow v. Spotsylvania Cty. Sheriff,* 783 F.Supp. 274, 279 (E.D.Va.1992).

---

**12.** While it is not necessary to reach the merits of MKI's classification of Muston as an administrative, professional or executive employees, the reasonableness of this classification is relevant to a determination of the limitations period and availability of liquidated damages and is therefore addressed *infra* at Parts III and IV.

**13.** "A cause of action for overtime wages accrues at each regular payday immediately following the work period during which services were rendered and for which overtime compensation is claimed." *Truslow v. Spotsylvania Cty. Sheriff,* 783 F.Supp. 274, 279 (E.D.Va.1992).

Both parties move for summary judgment on the applicable statute of limitations. Summary judgment is appropriate where the record shows that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Rule 56(c), Fed.R.Civ.P. This standard is met where the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). A "mere scintilla" of evidence is not enough. To the contrary, when viewed in the light most favorable to the non-moving party, the evidence must be sufficient for a reasonable jury to find in favor of that party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249–50, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986).

These principles, applied here, point persuasively the conclusion that summary judgment is warranted for MKI on the applicable statute of limitations. To benefit from a three year limitations period, Muston bears the burden of demonstrating that MKI's violation of FLSA was willful. *See McLaughlin,* 486 U.S. at 133, 108 S.Ct. at 1681. Muston contends that willfulness is demonstrated by three factors. First, Muston contends that inquiries into overtime practices by employees and government agencies with whom MKI contracted put MKI on notice that its employment policies violated FLSA, and that despite this notice, MKI neither changed its policy, nor sought guidance from DOL or outside legal counsel. Second, Muston points out that the instant complaint also gave MKI notice of its violation of FLSA, but that MKI's response to the complaint was simply to oppose the claim rather than to acknowledge the violation created by Muston's classification as exempt. Third, Muston argues that MKI's FLSA violation in this case is so clear that MKI must have known about it or recklessly proceeded in the face of it.

 None of these contentions, individually or collectively, show that MKI willfully

violated FLSA. In *McLaughlin,* the Supreme Court held that to meet the willfulness standard, a plaintiff must show (1) more than negligence, (2) more than that the employer was incorrect in assuming compliance with FLSA, and (3) more than that the employer knew that FLSA was "in the picture." *McLaughlin,* 486 U.S. at 132–33, 135, 108 S.Ct. at 1680–81, 1682–83. Muston's contentions fall far short of this standard. Thus, the first two contentions establish no more than that MKI knew that FLSA applied and was incorrect in assuming its policy complied with FLSA's requirements. Neither of these amount to willfulness under *McLaughlin.* Muston's third contention fares no better; it is an unpersuasive *ipse dixit* refuted by the facts at bar, namely (i) that MKI did not actually apply its leave without pay provision in a manner resulting in impermissible deductions, and (ii) that the law of this circuit has been unclear on whether an employer's policy language is trumped by the actual practice under the policy. In sum, no reasonable jury could find that MKI's classification of Muston as a "salary basis" employee constituted a willful violation of FLSA.

The analysis does not end here because MKI must, on the merits, do more than show that Muston is a "salary basis" employee; it must also show that he is properly categorized as a professional or administrative employee under the regulations.[14] Because MKI, as a threshold matter, failed to demonstrate that Muston was salaried, the question of whether Muston was an administrative, executive, or professional employee was not reached here. Yet, given that MKI would be required to prove Muston's inclusion in one of these categories to exempt him from FLSA, it follows that MKI's position on these issues is relevant to whether any FLSA violation was willful. Specifically, the relative merit of MKI's position on these issues is relevant to whether there is a triable issue of fact on whether MKI "either knew or showed reckless disregard for whether" the classification of Muston as an exempt employee was a FLSA violation. Thus, a triable issue of fact on willfulness might arise if MKI's basis for classifying

**14.** MKI has apparently abandoned its contention that Muston was an executive.

Muston as a professional or administrative employee is plainly meritless. On the other hand, willfulness is foreclosed if MKI's position on the matters if plausible and sound.

It is clear from the current record that MKI's classification of Muston in one of these two categories is reasonable and hence cannot constitute a willful FLSA violation. In relevant part, to classify Muston as an exempt professional, MKI would have to show that Muston's work required the consistent exercise of discretion and judgment, and fit into one of three categories: (1) teaching and instructing, (2) the application of specialized knowledge in computer systems, programming and software engineering, or (3) advanced knowledge in a field of science or learning customarily acquired by a prolonged course of specialized intellectual instruction and study. 29 C.F.R. § 541.3(e). The current record includes uncontradicted evidence that Muston, in the performance of his duties, was required to exercise judgment and discretion and to use advanced knowledge in the field of military logistics. This record, therefore, precludes a triable issue of fact on whether MKI's classification of Muston as a professional employee was a willful FLSA violation.

In the alternative, to classify Muston as an administrative employee, MKI must show that Muston's position included the exercise of discretion, and that his primary duty consisted of office work directly related to management policies or general business operations of his employer or his employer's customers. 29 C.F.R. § 541.2. The current record includes uncontradicted evidence that Muston, in the performance of his duties, was required to exercise considerable judgment and discretion and to provide, for clients, consulting services of a general administrative nature. This record, therefore, precludes a triable issue of fact on whether MKI's classification of Muston as an administrative employee was a willful FLSA violation.

The record as a whole contains sufficient evidence to preclude a reasonable trier of fact from concluding that MKI's classification of Muston as an exempt employee was a willful violation of FLSA overtime requirements. Thus, the applicable statute of limitations is two-years.

### IV.

The final issue presented by the parties' cross motions for summary judgment is the propriety of liquidated damages. Pursuant to 29 U.S.C. § 216(b), liquidated damages are awarded to a prevailing plaintiff in a FLSA action unless:

> the employer shows to the satisfaction of the court that the act or omission giving rise to such action was in good faith and that he had a reasonable grounds for believing that his act or omission was not in violation of [FLSA].

29 U.S.C. § 260.[15] This standard imposes on an employer who violates FLSA the burden of showing (1) that it had a subjective good faith belief that its policy provisions complied with FLSA,[16] and (2) that this good faith belief was objectively reasonable. To satisfy the subjective prong, and employer must prove that it had " 'an honest intention to ascertain what [FLSA] requires and to act in

---

15. Even where an employer can show good faith and a reasonable basis for its belief that it was in compliance with FLSA, courts may, nonetheless, award liquidated damages. See 29 U.S.C. § 260; see also Thompson v. Sawyer, 678 F.2d 257, 282 (D.C.Cir.1982) ("[S]ection 260 provides specifically that even if the employer meets his burden of proof, a decision to spare him liquidated damages remains 'within the sound discretion' of the trial judge."); Truslow, 783 F.Supp. at 279. A decision by a district court to award liquidated damages after "good faith" has been established is governed by equitable considerations, and is subject to review for abuse of discretion. Fowler v. Land Management Groupe, Inc., 978 F.2d 158, 163 (4th Cir.1992). In general, district courts waive liquidated damages under § 260 when the award of such damages would be unfair to an employer. Thompson, 678 F.2d at 281.

16. The statute's plain terms make clear that the good faith requirement in 29 U.S.C. § 260 is a subjective test. Accord Gilliam v. Montgomery Ward & Co., Inc., 912 F.Supp. 195, 197–98 (E.D.Va.1996). Although the Fourth Circuit has not explicitly addressed this point, other circuits have recognized the subjective nature of § 260's good faith requirement, see, e.g., Dybach v. State of Fla. Dept. of Corrections, 942 F.2d 1562 (11th Cir.1991), and this conclusion is implicit in the Fourth Circuit's analysis in Burnley v. Short, 730 F.2d 136, 140 (4th Cir.1984).

accordance with it.' " *Dybach v. State of Fla. Dept. of Corrections*, 942 F.2d 1562, 1566 (11th Cir.1991) (citations omitted).

■ The resolution of the cross motions for summary judgment on the applicable limitations period does not control the determination of the appropriateness of liquidated damages. *See Fowler v. Land Management Groupe, Inc.*, 978 F.2d 158, 163 (4th Cir.1992) (discretion to award liquidated damages not completely constrained by determination of "willfulness" for purposes of statute of limitations). This is so (i) because the liquidated damages inquiry involves the objective reasonableness of an employer's good faith belief in FLSA compliance, not whether the employer's violation was willful, and (ii) because the employer, not the employee, bears the burden of proof on this issue. *See Burgess v. Catawba County*, 805 F.Supp. 341, 351 (W.D.N.C.1992) ("[A]n employer's conduct may be found to be not willful, yet he may be unable to meet his burden of establishing good faith and reasonable reliance so as to avoid the imposition of liquidated damages.") Accordingly, the limitations period determination in favor of MKI does not, by itself, compel the conclusion that MKI escapes liability for liquidated damages.

■ Nonetheless, summary judgment is warranted for MKI on the issue of liquidated damages. To escape liquidated damages, MKI must demonstrate that its classification of Muston as an exempt employee was in good faith and based on objectively reasonable grounds. The uncontradicted record establishes that neither outside counsel nor the DOL was consulted by MKI with respect to MKI's FLSA compliance. Yet, the uncontradicted record also demonstrates (i) that MKI's employment manual was adapted verbatim from a large company in MKI's industry with an in-house legal staff, (ii) that an officer of MKI periodically reviewed and updated the manual, (iii) that this officer is a member of the bar, and (iv) that this officer attended continuing legal education classes and consulted booklets with respect to MKI's

FLSA compliance. These facts, and MKI's actual application of its policy manual to avoid impermissible deductions, demonstrate persuasively and show "to the satisfaction of the court" that MKI made an honest attempt to ascertain what FLSA requires and to act in accordance with it and, thus, preclude a triable issue of fact on MKI's subjective good faith. *Dybach*, 942 F.2d at 1566.

Moreover, as the discussion in Part III confirms,[17] MKI's good faith belief in its compliance with FLSA was objectively reasonable. The sparse authority on this issue supports this conclusion. In *Burnley v. Short*, 730 F.2d 136 (4th Cir.1984), monthly industry newsletters were held to be an objectively reasonable basis for an employer's belief that FLSA did not apply to motel employees. *Id.* at 140. The panel held that although "an employer may not simply remain blissfully ignorant of FLSA requirements", the motel owner's efforts to remain informed on FLSA requirements could "not be characterized as an 'ostrichlike attitude of self-delusion.' " *Id.* (citing *Mitchell v. Hausman*, 261 F.2d 778, 780 (5th Cir.1958)). MKI's classification of Muston as an exempt employee was not an exercise of "self-delusion." First, a lawyer employed by MKI performed periodic reviews and updates of MKI's policy manual to ensure compliance with FLSA. Moreover, MKI was not in compliance with FLSA regulations concerning the "salary basis" requirement because the language of the policy manual made Muston "subject to" impermissible deductions, even though no impermissible deductions were made. But the regulatory definition of "salary basis" leaves an ambiguity, unresolved in this circuit, on whether a policy's language is trumped by an employer's application of its policy. Thus, it is objectively reasonable for MKI to have concluded that by applying its policy in a manner which avoided impermissible deductions, it complied with FLSA. Finally, the record contains ample uncontradicted evidence to establish that MKI could reasonably conclude that Muston was a professional or administrative

---

**17.** The record evidence relevant to willfulness, as discussed in Part III, is also relevant to that aspect of liquidated damages that calls for an examination of an employer's good faith, reasonable belief that it was in compliance with FLSA. This is so despite the fact that the applicable standard and burden of proof on willfulness and liquidated damages are different.

**614**

employee. *See supra* Part III. These facts demonstrate persuasively and show "to the satisfaction of the court" that MKI had a reasonable basis for its belief that Muston was exempt from FLSA overtime requirements and, thus, preclude a triable issue of fact on the objective reasonableness of MKI's belief in its FLSA compliance.

MKI has shown that it had a good faith, reasonable belief in its in compliance with FLSA. Moreover, MKI's failure to comply with FLSA can be attributed, in large part, to an unresolved ambiguity in the regulations concerning the relevance of an employer's actual application of its policy. In these circumstances, the imposition of liquidated damages on MKI would be unfair and, accordingly, they are not awarded.

In conclusion, (1) summary judgment is granted for Muston and denied for MKI on the issue of Muston's coverage under FLSA overtime provisions, (2) summary judgment is granted for MKI and denied for Muston on the issue of the applicable limitations period, and (3) summary judgment is granted for MKI and denied for Muston on the issue of liquidated damages.

An appropriate Order has entered.