UNPUBLISHED

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

LEON A. MUSTON,
Plaintiff-Appellee,

v.                                                              No. 97-1084

MKI SYSTEMS, INCORPORATED,
Defendant-Appellant.

Appeal from the United States District Court
for the Eastern District of Virginia, at Alexandria.
T. S. Ellis, III, District Judge; Albert V. Bryan Jr.,
Senior District Judge; W. Curtis Sewell, Magistrate Judge.
(CA-96-299-A)

Argued: July 18, 1997

Decided: September 5, 1997

Before ERVIN, Circuit Judge, and BUTZNER and
PHILLIPS, Senior Circuit Judges.

_____

Vacated and remanded by unpublished opinion. Senior Judge Phillips
wrote the opinion, in which Judge Ervin and Senior Judge Butzner
joined.

_____

**COUNSEL**

**ARGUED:** Thomas Robert Folk, HAZEL & THOMAS, P.C., Falls
Church, Virginia, for Appellant. Sydney E. Rab, RICE & STALL-
KNECHT, P.C., Woodbridge, Virginia, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PHILLIPS, Senior Circuit Judge:

Leon A. Muston brought this action against his former employer, MKI Systems, Inc. (MKI), alleging pay and overtime violations under the Fair Labor Standards Act (FLSA). The district court (Ellis, J.) in a published opinion, Muston v. MKI Sys., Inc. , 951 F. Supp. 603 (E.D. Va. 1997), held that because MKI's policy manual plainly and unambiguously permitted improper pay deductions, Muston was thereby entitled, as a non-exempt employee, to recover unpaid overtime. Because the Supreme Court's subsequent decision in Auer v. Robbins, 117 S. Ct. 905 (1997), mandated a different standard than that applied by the district court for determining when employees are "subject to" impermissible deductions, hence to non-exempt status, we vacate the judgment of the district court and remand for reconsideration of Muston's claim under the new Auer standard.

I.

From July 1992 until May 3, 1994, Muston was employed by MKI, a small government contractor, as a Senior Systems Analyst. During his employment at MKI, Muston was required to record his work hours. This record-keeping was required by the federal government because MKI was performing cost-plus government contracts. Otherwise, Muston was paid a preset salary for every pay period, regardless of the quantity of his work, with one exception. This exception occurred in January 1994, when, for personal reasons, Muston took five days of leave without pay at his own request.

The MKI policy manual's language, as phrased at the relevant times, by its plain terms allowed MKI to deduct pay from any MKI employee for working less than the full amount of hours in a pay period. However, MKI never docked Muston's salary, and claims it never docked any other salaried employee's salary for absences,

2

except for prolonged absences of a day or more. Muston received his regular salary when he worked less than 40 hours a week, except for the five days of leave he voluntarily took.

Muston filed this complaint under the Fair Labor Standards Act, claiming that because of this policy, he was not an exempt employee, and was therefore entitled to unpaid overtime compensation. Following discovery, Muston moved for partial summary judgment. His motion contended that aspects of MKI's written policy manual made Muston "subject to" deductions not permitted by the Department of Labor's salary basis rule at 29 C.F.R. § 541.118. MKI opposed the motion, contending that MKI's policy and practice had been not to make any impermissible deductions, and that, in fact, MKI had not made any impermissible deductions from the salary of Muston or any of its salaried employees. Following oral argument on Muston's motion, MKI made a cross-motion for partial summary judgment. The district court entered an order granting summary judgment to Muston and denying partial summary judgment to MKI on the issue of Muston's coverage under the FLSA overtime provisions. The court denied summary judgment to both parties on the issue of liquidated damages, leaving for trial whether Muston was entitled to $397.37 in overtime pay or whether he was entitled to this amount plus an additional $397.37 as liquidated damages.

To avoid trial expenses, the parties stipulated that the district court could enter judgment in favor of Muston in the amount of $794.74, provided that this did not waive the parties right to appeal. The district court entered such a judgment which included the stipulation as an attachment, and this appeal by MKI followed. **1**

II.

To satisfy the FLSA'S "salary basis" requirement, and thereby be exempt from the FLSA's overtime compensation provisions, an employee must receive as compensation a pre-determined amount

_____

**1** One week after MKI filed its original notice of appeal, the district court filed a memorandum opinion, which, sua sponte, reversed its earlier ruling on liquidated damages, and granted summary judgment to MKI on the issue. MKI then filed an amended notice of appeal.

constituting all or part of his compensation, "which amount is not subject to reduction because of variations in the quality or quantity of the work performed." 29 C.F.R. § 541.118(a). Furthermore, subject to specific exceptions, "the employee must receive his full salary for any week in which he performs any work without regard to the number of days or hours worked." Id.

The dispositive issue before the district court was therefore simple: was Muston's compensation in the form of salary"subject to reduction because of variations in the . . . quantity of work performed" under MKI's written policy manual? Section 2001 of that Manual provided at the critical time in issue that:

> Each hourly employee is paid for the total hours reported on his/her time sheet. Each salaried employee is paid his/her semimonthly salary provided the total hours reported on his/her time sheet equal at least the total amount of hours in the full pay period. <u>When an employee works less than the full amount of hours during a particular pay period,</u> due to initial employment, termination, or as a result of taking leave without pay, <u>pay will be calculated based on the percentage of working hours that an employee actually worked in that pay period.</u>

JA 18 (emphasis added).

Following the filing of this action, MKI had amended this policy statement to provide expressly that salaried employees' pay would only be docked for absences exceeding a full work day. And, in the district court MKI contended that this had always been actual practice, the old policy statement of a contrary possibility having been simply an inadvertent misstatement. Muston countered that because the policy manual categorically stated that deductions <u>would</u> occur, this necessarily meant that he was "subject to" the deductions. Furthermore, he pointed out that there had been no discovery on the matter so that the record did not reveal whether the actual practice with respect to other employees had been as MKI asserted.

The district court, in the absence of Fourth Circuit authority, and facing a then-existing split among other circuits, adopted and applied

4

the then current majority view which favored Muston. Under that view, the existence of an employer's prerogative to dock pay for absences not exceeding a full day's work period, even if the prerogative was unexercised, made salaried employees to whom it applied entitled to the overtime-pay protections of the FLSA pursuant to 29 C.F.R. § 541.118(a). See, e.g., Abshire v. County of Kern, 908 F.2d 483 (9th Cir. 1990); Kinney v. District of Columbia, 994 F.2d 6 (D.C. Cir. 1993); Michigan Ass'n of Governmental Employees v. Michigan Dep't of Corrections, 992 F.2d 82, 86 (6th Cir. 1993); Klein v. Rush-Presbyterian-St. Luke's Med. Ctr., 990 F.2d 279 (7th Cir. 1993); Martin v. Malcolm Pirnie, Inc., 949 F.2d 611 (2d Cir. 1991); Carpenter v. City and County of Denver, 82 F.3d 353, 359 (10th Cir. 1996), vacated, 117 S. Ct. 1078 (1997). The minority view, by contrast, allowed any actual practice of non-docking with respect to allowable deductions to trump the language of the policy. See Atlanta Prof'l Firefighters Union Local 134 v. City of Atlanta, 920 F.2d 800, 805 (11th Cir. 1991); McDonnell v. City of Omaha , 999 F.2d 293, 296-97 (8th Cir. 1993).

The crux of the district court's reasoning was its interpretation of the "subject to" requirement of 29 C.F.R.§ 541.118:

> Courts considering the issue have split on whether the actual application of an employer's policy is controlling where the practice contradicts the policy language. The majority of circuits considering this question have held that whether the employee is "subject to" an impermissible deduction, the exemption is lost, regardless of whether an impermissible deduction is ever made. In Abshire, the seminal case for this view, the Ninth Circuit found the employer's argument that no deductions had actually been made "both misleading and irrelevant"; the dispositive factor in that court's view was whether the policy made an employee's pay "subject to" deduction. Abshire, 908 F.2d at 487. The minority view, by contrast, allows the actual practice with respect to deductions to trump the language of the policy.
>
> . . . .
>
> . . . . Thus, the better approach to the question presented, and the approach adopted here, is that an employer loses the

5

> ability to claim an FLSA exemption for any employees who are "subject to" impermissible deductions, even if the employer has not yet made any such deductions. In other words, a court looks first to the policy's plain language. If that language is unambiguous and allows impermissible deductions, then the inquiry is complete, and the white collar exemptions are lost. Only if the language of the policy is ambiguous, will the employer's actual practice with respect to deductions be considered to give meaning to the terms of an ambiguous policy. See, e.g., Michigan Dep't of Corrections, 992 F.3d at 86.

Muston, 951 F. Supp. at 608-09. Since the plain language of the MKI Policy permitted improper deductions, the court concluded that by those terms the Policy violated the FLSA.

> In pellucidly clear language, § 2001 states that salaried employees who take leave without pay will have their pay calculated "based on the percentage of working hours the employee actually worked in that pay period." Given this plain language, it necessarily follows that in certain circumstances, an employee's pay can be reduced for periods of leave without pay that involve fractional days. This is contrary to the definition of salaried employee in FLSA's implementing regulations.

Id. at 607-08. In other words, "an employee's level of compensation is not guaranteed; rather, by the plain terms of the policy language it is `subject to reduction' for any hours the employee is absent on unpaid leave." Id. at 607.**2**

On this basis, the court ruled that Muston was a non-exempt employee entitled to overtime pay protections of the FLSA.

_____

**2** There is no dispute that MKI might, without consequence, reduce pay for time not worked in the initial and terminal weeks of employment. The dispute over MKI's policy is whether the policy subjected Muston to fractional, or partial, day pay deductions, which are those alone which invoke § 541.118(a)'s provisions.

6

III.

Following the district court's decision, the Supreme Court announced its decision in Auer v. Robbins, 117 S. Ct. 905 (1997). In that decision, the Auer Court directly held on the matter here at issue that the controlling interpretation of the relevant regulation was that advanced by the Department of Labor in an amicus brief. Id. at 909; see also id. at 912 (fact that interpretation comes in form of a legal brief does not make it unworthy of deference). Under that interpretation, which is at odds with that applied by the district court, salaried employees such as Muston fall outside the salary-basis exemption if they "are covered by a policy that permits disciplinary or other deductions in pay `as a practical matter.'" Id. at 911 (quoting Secretary's amicus brief).**3** This "as a practical matter" standard is met in either of two circumstances: (1) when the employer has an actual practice of making such deductions, or (2) when the employment policy at issue "creates a `significant likelihood' of such deductions." Id.; see also Stanley v. City of Tracy, ___ F.3d ___, No. 95-16242, 1997 WL 397581 (9th Cir. July 16, 1997) (applying Auer test); Childers v. City of Eugene, ___ F.3d ___, No. 96-35443, 1997 WL 393081 (9th Cir. July 15, 1997) (same); Ahern v. County of Nassau, ___ F.3d ___, No. 96-7742, 1997 WL 365376 (2d Cir. July 3, 1997) (same); Balgowan v. New Jersey, 115 F.3d 214, 219 (3d Cir. 1997) (same); Carpenter v. City and County of Denver, 115 F.3d 765 (10th Cir. 1997) (same).

A finding of "significant likelihood" of deductions in the absence of any actual deductions "requires a clear and particularized policy-- one which `effectively communicates' that deductions will be made in specified circumstances." Auer, 117 S. Ct. at 911. This means that even if a policy on its face applies to both exempt and non-exempt employees alike, it does not necessarily "effectively communicate" that the deductions in question will apply to the exempt employees. Id. at 911-12. As explained in Auer, a policy that nominally covers all employees

_____

**3** Although Muston urges us to read this test as being limited to disciplinary deductions, we decline to do so. The Court made clear, as did the amicus brief of the Department of Labor, that the interpretation applies to "other deductions" as well. Id. at 911.

7

> does not "effectively communicate" that pay deductions are an anticipated form of punishment for [salaried] employees . . . since it is perfectly possible to give full effect to every aspect of the manual without drawing any inference of that sort. If the statement of available penalties applied solely to [salaried employees], matters would be different; but since it applies both to [salaried employees] and to employees who are unquestionably not paid on a salary basis, the expressed availability of . . . deductions may have reference only to the latter. No clear inference can be drawn as to the likelihood of a sanction's being applied to [salaried] employees such as petitioners.

Id. at 911-12. In other words, a written policy which is nominally applicable to all employees, both salaried and non-salaried, and authorizes deductions which would be proper only for non-salaried employees, does not, without more, communicate as a practical matter that such deductions will be made for employees who otherwise satisfy the salary test.

In adopting the Department of Labor's interpretation, the Court indicated that the "significant likelihood" test avoided "the imposition of massive and unanticipated overtime liability . . . in situations in which a vague or broadly worded policy is nominally applicable to a whole range of personnel but is not `significantly likely' to be invoked against salaried employees." Id. at 911. Under this interpretation, the existence of isolated, stray factors does not meet the burden of establishing a "significant likelihood." For example, a "significant likelihood" cannot be established by a one-time deduction under unusual circumstances. Id. at 911-12.

MKI urges that on the basis of Auer's obvious rejection of the test applied by the district court, we should simply reverse that court's judgment. That would not be proper. Application of Auer's "as a practical matter" test requires a factual inquiry not yet undertaken and that is properly the work of the district court on the remand we will order.

IV.

Alternatively, MKI contends that we should reverse the district court's judgment on the basis that even if its former policy failed

8

Auer's "as a practical matter" test, it had, by amending that policy effectively invoked the saving provisions of the"window of opportunity" conferred by 29 C.F.R. § 541.118(a)(6), which provides that

> [W]here a deduction not permitted by these interpretations is inadvertent, or is made for reasons other than lack of work, the exemption will not be considered to have been lost if the employer reimburses the employee for such deductions and promises to comply in the future.

The district court rejected this argument when advanced in that court as an alternative by MKI. The issue may or may not arise again upon the remand we will order for reconsideration of the principle issue under Auer. That decision also dealt, in ways that could be relevant to this case, with the proper interpretation and application of this "window of opportunity" provision. In view of our remand for reconsideration of the principal issue, we believe it prudent also to leave to the district court the question whether Auer also requires any reconsideration of the "window of opportunity issue," should it again be reached.

V.

For these reasons, we vacate the judgment of the district court and remand the action for reconsideration on further proceedings in light of Auer and of this opinion.

SO ORDERED

9